(Nos. 62644, 62645 cons.—

JOSE ISABEL GONZALEZ, Appellee, v. PRESTRESS ENGINEERING CORPORATION, Appellant.— JOHN REPYAK *et al.*, Appellees, v. PRESTRESS ENGINEERING CORPORATION, Appellant.

*Opinion filed December 19, 1986.*

2

RYAN and MORAN, JJ., dissenting.

Julie Badel, Michael T. Roumell and Nancy G. Ross, of McDermott, Will & Emery, of Chicago, for appellant.

Emmanuel F. Guyon, of Streator, for appellees.

Harold A. Katz, Jerome Schur and David E. Rapoport, of Katz, Friedman, Schur & Eagle, of Chicago, for *amicus curiae* W.G. Stewart.

Thomas H. Geoheghan, of Despres, Schwartz & Geoheghan, of Chicago, and Paul Alan Levy and Alan B. Morrison, of Washington, D.C., for *amici curiae* Team-

sters for a Democratic Union *et al.*

James D. Lynch, of Springfield, for *amicus curiae* United Mine Workers of America, District 12.

Charles C. Jackson and Robert B. Ulrich, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for *amicus curiae* the Illinois State Chamber of Commerce.

CHIEF JUSTICE CLARK delivered the opinion of the court:

In *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, *cert. denied* (1985), 474 U.S. 909, 88 L. Ed. 2d 243, 106 S. Ct. 278, *cert. denied* (1985), 472 U.S. 1032, 87 L. Ed. 2d 642, 105 S. Ct. 3513, this court held that a tort action for retaliatory discharge for exercising rights under the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*), established in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, as a remedy available to at-will employees, was equally available to unionized employees covered by a collective-bargaining agreement. We allowed leave to appeal in these consolidated cases to determine whether, in light of the subsequent Supreme Court decision in *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904, section 301 of the Labor Management Relations Act (section 301) (29 U.S.C. sec. 185(a) (1982)) preempts the independent State tort action recognized in *Midgett*, and whether failure to exhaust grievance procedures established in a collective-bargaining agreement bars the action.

The two cases consolidated in this appeal were first before this court, together with a third consolidated case, in *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, *cert. denied* (1985), 474 U.S. 909, 88 L. Ed. 2d 243, 106 S. Ct. 278, *cert. denied* (1985), 472 U.S. 1032, 87 L. Ed. 2d 642, 105 S. Ct. 3513. We briefly review the

facts and procedural history of both cases.

In August 1981, plaintiff Jose Gonzalez filed a workers' compensation claim with the Industrial Commission for an injury he suffered while employed by defendant, Prestress Engineering Corporation (Prestress). On August 23, 1982, an Industrial Commission arbitrator denied the claim, finding that Gonzalez' injury did not arise out of and in the course of his employment. Gonzalez was discharged on September 20, 1982. Plaintiff John Repyak also sustained injury while employed by Prestress, and in July 1981 was awarded $12,601 in benefits under the Workers' Compensation Act. Repyak was terminated on October 6, 1982.

As union members of Laborers' Local No. 996 of the North Central Illinois Laborers' District Council, Gonzalez and Repyak were covered by a collective-bargaining agreement between the local and Prestress. The agreement requires "just cause" for discharge and establishes a four-step grievance procedure culminating in final and binding arbitration if the local pursues the grievance to that extent. Neither Gonzalez nor Repyak filed grievances concerning their respective terminations. Instead, they filed separate complaints in the circuit court of Livingston County alleging that Prestress had discharged them in retaliation for their filing workers' compensation claims under the Workers' Compensation Act. Both Gonzalez and Repyak aver in their complaints that Prestress informed them that they were being discharged because they filed claims for benefits under the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*), and aver that there was no other reason for their discharge.

In both cases, the circuit court granted Prestress' motion to dismiss for failure to state a cause of action. The appellate court affirmed both dismissals and, in *Midgett*, we reversed the circuit and appellate court

judgments and remanded the causes for proceedings consistent with our holding there, that the complaints stated a valid tort claim for retaliatory discharge in violation of clearly mandated public policy. On remand, Prestress filed answers to each complaint, raising two affirmative defenses: (1) that each claim is preempted by section 301; and (2) that each claim is barred for failure to pursue and exhaust the grievance procedure provided by the collective-bargaining agreement.

Gonzalez and Repyak moved to strike the affirmative defenses. The circuit court granted the motions but found that a question of law existed on which there was a substantial difference of opinion and that an immediate appeal from the interlocutory order under our Rule 308 (87 Ill. 2d R. 308) would materially advance the ultimate termination of the litigation. The appellate court denied Prestress' petitions for interlocutory appeal. We granted leave to appeal to consider Prestress' affirmative defenses in light of *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904.

On its face, section 301 vests jurisdiction over suits for breach of collective-bargaining agreements only in the Federal district courts. (29 U.S.C. sec. 185(a) (1982).) However, in *Charles Dowd Box Co. v. Courtney* (1962), 368 U.S. 502, 7 L. Ed. 2d 483, 82 S. Ct. 519, the Supreme Court found that, in enacting section 301, Congress intended both State and Federal courts to have concurrent jurisdiction over suits alleging a breach of a collective-bargaining agreement. Although State courts have concurrent jurisdiction over section 301 claims, principles of Federal labor law preempt inconsistent State law. (*Teamsters v. Lucas Flour Co.* (1962), 369 U.S. 95, 104, 7 L. Ed. 2d 593, 600, 82 S. Ct. 571, 577.) Based upon the recent decision of *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904, where the Supreme Court extended the con-

tours of section 301 to include State tort claims derived from a labor contract, Prestress argues that the instant claims fall within the preemptive ambit of section 301.

In *Allis-Chalmers*, a unionized employee filed suit against both his employer and an insurance company which administered the disability plan incorporated into the collective-bargaining agreement between the employer and the union. A separate letter of understanding, binding upon the parties, created a three-step grievance procedure for disputes concerning disability payments under the plan. Dissatisfied with the manner in which disability payments were made following a non-occupational injury, the employee alleged bad-faith handling of his disability claim, a tort under Wisconsin law. The Wisconsin Supreme Court found that a tort claim of bad faith was distinguishable from a bad-faith breach-of-contract claim and thus concluded that the action did not arise under section 301.

The United States Supreme Court reversed, holding that the State tort claim was preempted by section 301. In so doing, the Supreme Court first found that congressional policy favoring the administration of collective-bargaining agreements under a uniform body of Federal law required that the preemptive force of section 301 extend beyond suits for breach of a labor contract. "Any other result" the court reasoned, "would elevate form over substance and allow parties to evade the requirements of section 301 by relabeling their contract claims as claims for tortious breach of contract." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 211, 85 L. Ed. 2d 206, 215, 105 S. Ct. 1904, 1911.) The court, however, also emphasized:

> "Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by section 301 or other provisions of the federal labor law. *** In extending the

pre-emptive effect of section 301 beyond suits for breach of contract, *it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.*" (Emphasis added.) 471 U.S. 202, 211-12, 85 L. Ed. 2d 206, 215-16, 105 S. Ct. 1904, 1911-12.

With this caveat, the court framed the test as "whether the [tort claim as applied] confers non-negotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." (471 U.S. 202, 213, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.) After carefully examining Wisconsin case law, the court observed that the State-imposed tort duty and right asserted in the claim were actually derived from an implied covenant of good faith and fair dealing found in every contract executed in Wisconsin. The court concluded that "[b]ecause the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation." (471 U.S. 202, 218, 85 L. Ed. 2d 206, 219, 105 S. Ct. 1904, 1914-15.) The court thus held that section 301 preempted the derivative tort claim.

As an additional reason for finding preemption, the court noted that if section 301 did not preempt this type of derivative tort claim, the arbitration process would be emasculated since almost any wilful breach of contract can be brought as a tort action for breach of a good-faith duty under contract. To give a fair measure of the intended breadth of its decision, the court explained at the end of its opinion:

"It is perhaps worth emphasizing the narrow focus of the conclusion we reach today. *** [W]e [do not] hold that

every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by section 301. The full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis. We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a section 301 claim [citation] or dismissed as pre-empted by federal labor-contract law." 471 U.S. 202, 220, 85 L. Ed. 2d 206, 221, 105 S. Ct. 1904, 1916.

We find, under the principles announced in *Allis-Chalmers*, that the instant claims plainly fall outside the preemptive sphere of section 301. In *Allis-Chalmers*, the tort claim asserted was, by its derivative nature under Wisconsin law, a product of the labor contract, without which it could not have existed. Resolution of the tort claim was, therefore, substantially dependent upon an interpretation of the terms of the collective-bargaining agreement. Accordingly, section 301 preempted the claim. In stark contrast, the instant claims are firmly rooted in the clearly mandated public policy of this State, which, regardless of the existence or absence of a collective-bargaining agreement, confers upon all employees and employers certain nonnegotiable rights and imposes certain nonnegotiable duties and obligations.

It is well established that "[t]he foundation of the tort of retaliatory discharge lies in the protection of public policy" (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 133), and there is clearly mandated public policy favoring protection of employees who, whether unionized or not, exercise their rights under the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.4(h)). To effectuate Illinois' public policy of providing employees with an effective and equitable means

of exercising their rights under the Act without fear or risk of termination, this court recognized in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, an action in tort, wholly separate and independent from any contract-based action.

Prestress argues that section 301 preempts the instant claims because, it contends, an interpretation of the "just cause" provision in the collective-bargaining agreement is necessary to their adjudication. That, however, is not the law in Illinois. To prevail in an action for retaliatory discharge, an employee must show that he was discharged for his activities, and that the discharge is in violation of clearly mandated public policy. *Price v. Carmack Datsun, Inc.* (1985), 109 Ill. 2d 65, 67; *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134.

Where, as here, the State tort claim is based on a duty and right firmly rooted and fixed in an important and clearly defined public policy, evaluation of the tort claim does not in any way depend upon an interpretation of the "just cause" provision in a labor contract. Certainly a determination of whether an employee has been discharged in violation of clearly mandated public policy in no way turns upon whether the discharge was or was not "just" within the meaning of a labor contract. Were it otherwise, the public policy of this State would become a mere bargaining chip, capable of being waived or altered by the private parties to a collective bargain. "Clearly, section 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 212, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.

Prestress also relies on this court's recent decisions in *Bartley v. University Asphalt Co.* (1986), 111 Ill. 2d 318, and *Koehler v. Illinois Central Gulf R.R. Co.*

(1985), 109 Ill. 2d 473, in an effort to pull the instant claims within the contours of section 301. However, Prestress' reliance on either case is misplaced. In *Bartley*, we held that the plaintiff's complaint against his union, though styled as a tort claim for civil conspiracy in furtherance of the employer's alleged retaliatory discharge of the plaintiff, essentially alleged a breach of the labor agreement and a breach of the union's duty of fair representation. Since a resolution of the claim against the union was " 'substantially dependent upon analysis of the terms of [the collective-bargaining] agreement' " (*Bartley v. University Asphalt Co.* (1986), 111 Ill. 2d 318, 332, quoting *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 220, 85 L. Ed. 2d 206, 221, 105 S. Ct. 1904, 1916), the claim was preempted by Federal labor-contract law.

In arguing that *Bartley* can be construed to support preemption of the instant claims, Prestress errs by failing to distinguish the fundamental difference between the claims asserted here and the claim in *Bartley*, which accordingly warrant opposite, yet consistent, conclusions under *Allis-Chalmers*. *Bartley* is inapposite here for precisely the same reason that the instant claims for retaliatory discharge do not come within the preemptive effect of section 301. Because the gravamen of the instant claims arises out of an alleged violation of clearly mandated public policy, as opposed to the purely private interests which arise, as in *Bartley*, from an alleged breach of the labor agreement, *Bartley* cannot be read to support a finding of preemption here. Prestress' reliance on *Koehler* is equally misplaced. *Koehler* involved the preemptive effect of the Railway Labor Act (45 U.S.C. secs. 151 through 164 (1982)) and is therefore clearly inapposite.

Because the claims asserted arise under the clear mandate of Illinois public policy, which exists independ-

ent of any privately negotiated contract rights or duties, we conclude that their adjudication in no way depends upon an interpretation of the "just cause" provision of the labor contract. It bears noting that even if the labor contract covering Gonzalez and Repyak recited the rights and obligations arising under the Workers' Compensation Act and expressly provided that a discharge in contravention of the Act was without "just cause," the claims would still fall entirely outside the preemptive sphere of section 301. Neither an employer nor a union can strip an employee of the protections of Illinois law by merely restating the rights and obligations that arise thereunder in a private labor agreement. As the Supreme Court recognized in *Allis-Chalmers*, section 301 does not accord the substantive provisions of a private labor agreement the supremacy of Federal law, thereby preempting State law. "Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 212, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1911-12.) We conclude that the circuit court properly granted the motions to strike with respect to Prestress' first affirmative defense and consider next its affirmative defense that the claims are barred for failure to exhaust the grievance procedure established in the collective-bargaining agreement.

In *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, *cert. denied* (1985), 474 U.S. 909, 88 L. Ed. 2d 243, 106 S. Ct. 278, *cert. denied* (1985), 472 U.S. 1032, 87 L. Ed. 2d 642, 105 S. Ct. 3513, this court held that a unionized employee need not plead exhaustion of the grievance-arbitration procedure established in a collective-bargaining agreement in order to state a valid cause of action for retaliatory discharge. In so holding, we observed that the exhaustion of contract remedies is not a

prerequisite to the filing of an action sounding in tort. This court also rejected the contention that the Federal labor-law policy favoring arbitration of contractual disputes would be undermined if unionized employees could initially avail themselves of a right of action for an alleged retaliatory discharge in contravention of clearly mandated public policy. Noting the substantial State interest in protecting the rights of employees under the Workers' Compensation Act and in deterring unscrupulous employers who would otherwise threaten or discharge employees for exercising those rights, we found that the right of action to redress a violation of strong public policy would not have "any perceptible effect on the use of arbitration." 105 Ill. 2d 143, 151.

Prestress argues that we should overrule our holding in *Midgett*. We disagree. Prestress does not cite authority for, nor is this court familiar with, any rule of law requiring a unionized employee to exhaust the grievance procedure established by private labor agreement before filing an action to redress a nonderivative tort claim grounded in a violation of important public policy. Clearly *Allis-Chalmers* does not supply such a rule for, unlike this case, it did not involve a nonderivative State tort action firmly rooted in an important public policy which "proscribe[s] conduct, [and establishes] rights and obligations, independent of a labor contract." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 212, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.) Nor will this court premise such a rule on a legal fiction that would purport to hold that unionized employees, in exchange for the rights they derive from a labor contract, accept a requirement that contract remedies be exhausted before bringing a suit to vindicate a right established by important public policy, independent of the labor contract.

While we recognize the importance and "central role of arbitration in our 'system of industrial self-govern-

ment' " (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 219, 85 L. Ed. 2d 206, 220, 105 S. Ct. 1904, 1915, quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 581, 4 L. Ed. 2d 1409, 1416, 80 S. Ct. 1347, 1352), the fact that an arbitrator is traditionally confined by the labor contract to interpretation and application of its terms evidences that the jurisdiction of the arbitral forum is not without limit. Indeed, the arbitration clause in the parties' collective-bargaining agreement provides that the arbitrator "shall have authority to consider only grievances presenting an arbitrable issue under this Agreement." Further, the arbitration clause expressly limits the scope of an arbitrable grievance to differences of opinion between the parties "with respect to the meaning and application of a term or terms of the Agreement." Thus, by its own terms, the arbitration clause limits the duty to arbitrate to disputes arising under the agreement. The claims here are not in any way derived from the agreement. We therefore conclude that the circuit court properly allowed the motions to strike Prestress' second affirmative defense.

For the reasons stated, the judgment of the circuit court is affirmed, and the cause is remanded for further proceedings consistent with this opinion.

*Affirmed and remanded.*

JUSTICE RYAN, dissenting:

The majority opinion recognizes that there were collective-bargaining agreements between the employers and the unions covering the employees involved in these consolidated cases. The majority also recognizes that these agreements require "just cause" before an employee may be discharged, and establish grievance procedures, cumulating in final and binding arbitration for such grievances. However, using the same rationale of

the Wisconsin Supreme Court, which was rejected in *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904, the majority of this court finds in these cases that a tort cause of action arising out of a wrongful discharge is separate and distinct from the "just cause" discharge provisions of the collective-bargaining agreements.

The majority finds support for its conclusion from language in *Allis-Chalmers* which states that not every dispute concerning employment is preempted by the provisions of Federal labor law. It may well be that the Supreme Court, in *Allis-Chalmers*, left the preemption door ajar insofar as permitting certain State causes of actions arising from employment-related disputes. However, the Supreme Court, in *Allis-Chalmers*, expressed no uncertainty as to claims such as are now before us, because that opinion specifically mentioned claims arising out of "unfair discharge" as an example of claims which should not bypass the Federal labor-law scheme by way of a State law tort action. The majority opinion in our case failed to quote the following language from *Allis-Chalmers*, which I find directly addresses the issue before us. In explaining its rationale in *Allis-Chalmers*, the Supreme Court stated:

> "Since nearly any alleged willful breach of contract can be restated as a tort claim for breach of a good-faith obligation under a contract, the arbitrator's role in every case could be bypassed easily if section 301 is not understood to pre-empt such claims. Claims involving vacation or overtime pay, work assignment, *unfair discharge*—in short, the whole range of disputes traditionally resolved through arbitration—could be brought in the first instance in state court by a complaint in tort rather than in contract." (Emphasis added.) *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 219-20, 85 L. Ed. 2d 206,

220-21, 105 S. Ct. 1904, 1915-16.

Despite this seemingly unambiguous description of the intended scope of the *Allis-Chalmers* rule, the majority insists that this particular species of "unfair discharge" falls outside its preemptive limits. I find no meaningful basis upon which to distinguish the instant claim from that deemed preempted in *Allis-Chalmers*.

As the majority correctly notes, the pertinent aspect of the test for preemption articulated in *Allis-Chalmers* asks "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 213, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.) A tort claim is preempted if its resolution is ' 'substantially dependent upon analysis of the terms of he collective-bargaining] agreement.' " *Bartley v. University Asphalt Co.* (1986), 111 Ill. 2d 318, 332, quoting *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 220, 85 L. Ed. 2d 206, 221, 105 S. Ct. 1904, 1916.

The claim for retaliatory discharge must necessarily assert that the employee was wrongfully discharged or, as stated in the collective-bargaining agreement, discharged without just cause or, as phrased by the Supreme Court in *Allis-Chalmers*, unfairly discharged. I do not understand how the majority can conclude that the tort claim of retaliatory discharge in this case is not inextricably intertwined with the terms of the labor contract. The cause of action for retaliatory discharge confers no new right of action against the employer independent of those grievances covered by the collective-bargaining agreement. If *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, and its progeny, which created in this State the tort cause of action for retaliatory discharge, had never been decided, an employee discharged for filing a workers' compensation claim still would have

had a grievance against his employer under the "just cause" provision of the collective-bargaining agreement, and this grievance would have been handled pursuant to the procedures established in that agreement. The tort claim for retaliatory discharge does not exist independent of facts covered by the employment agreement. It is another cause of action grafted onto and arising out of the same set of facts that give rise to a grievance under the "just cause" provision of the collective-bargaining agreement.

Consistent with these principles, Prestress contended that a claim of retaliatory discharge is preempted because it necessarily implicates and requires interpretation of the "just cause" provision of the labor contract. In rejecting this assertion, the majority states, "that, however, is not the law in Illinois." I take this statement to mean that, as a matter of State law, the term "just cause" does not necessarily encompass retaliatory dismissals. Therein lies the flaw in the majority's reasoning.

Whether or not one agrees that as a matter of State law "just cause" includes retaliatory discharge is simply irrelevant in my view. The point of *Allis-Chalmers* is that in any case the determination may not be limited by or dependent upon State law. The Supreme Court stated that the question of whether a State tort claim is "sufficiently independent of federal contract interpretation to avoid preemption is, of course, a question of federal law." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 214, 85 L. Ed. 2d 206, 217, 105 S. Ct. 1904, 1913.) Thus, a State court lacks authority to declare that as a matter of State law a given claim is or is not within the scope of the "just cause" provision. See Comment, *Midgett v. Sackett in the Aftermath of Allis-Chalmers: The Impact of Federal Labor Law on Retaliatory Discharge Claims*, 6 N. Ill. U. L. Rev. 347, 375 (1986).

In conclusion, I believe the majority violates the clear

18

command of *Allis-Chalmers* by placing a State law gloss on the terms of a collective-bargaining agreement. In so doing, it opens the door to the precise mischief condemned in *Allis-Chalmers*: end runs around the grievance and arbitration processes, and varying interpretations of ostensibly universal terms in labor contracts. If Illinois is free to decide what "just cause" means or does not mean, any and all contract provisions are apparently fair game. I dissent.

JUSTICE MORAN joins in this dissent.