The **HOME INSURANCE COMPANY, a New Hampshire corporation, et al., Plaintiff,**

v.

**SERVICE AMERICA CORPORATION, f/k/a Servomation Corporation, a Delaware corporation, et al., Defendant.**

**No. 86 C 4165.**

United States District Court, N.D. Illinois, E.D.

Feb. 25, 1987.

John J. Witous, Henry R. Daar, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., for plaintiff.

Thomas F. Ging, Alan J. Mandel, Isham, Lincoln & Beale, Chicago, Ill., Dale A. Cooter, Donna S. Mangold, Cooter & Gell, Washington, D.C., for defendant.

## ORDER

BUA, District Judge.

This matter concerns plaintiff's motion for reconsideration of this court's December 1, 1986 ruling denying plaintiff's motion to dismiss Count II of defendant's countercomplaint. For the reasons stated herein, this court grants plaintiff's motion for reconsideration and grants summary judgment on Count II of defendant's countercomplaint insofar as it claims punitive damages.

## I.  FACTS

In January 1985, defendant Service America Corporation (SAC) and plaintiff Home Insurance Company (Home) entered into an insurance agreement pursuant to which Home was to provide coverage to SAC for, *inter alia*, business interruption and property damage. SAC initially applied for the insurance through Johnson & Higgins, a Los Angeles insurance broker. The application was forwarded to Home's central underwriting office in New York City where it was reviewed by Susan Kramer, a Home underwriter. The application was accepted on the part of Home by Kramer, and a formal policy was executed and issued from Home's New York office bearing effective dates of January 1, 1985 to January 1, 1988. Kramer forwarded the executed policy to Home's Los Angeles office which in turn delivered the same to Johnson & Higgins. Donald Willhite, a broker for Johnson & Higgins, then physically delivered the executed policy to SAC in Los Angeles sometime in June 1985. On July 31, 1985, SAC's operations at Arlington Park Race Track in Arlington Heights, Illinois were completely destroyed by fire. Subsequently, Home denied SAC's claim of loss resulting from the fire, and this action was instituted.

## II.  DISCUSSION

On December 1, 1986, this court determined that since a claim for breach of duty of good faith and fair dealing sounded in tort, conflicts of law principles pertaining to tort actions should be addressed by the parties to assist this court in determining whether SAC could maintain a crossclaim for punitive damages against Home. However, in the recent decision of *Gonzalez v. Prestness Engineering Corp.*, 115 Ill.2d 1, 104 Ill.Dec. 751, 503 N.E.2d 308 (1986) (available on Westlaw Allstates Library), the Illinois Supreme Court recognized that a claim for punitive damages can, in certain circumstances, be so inextricably intertwined with a contract that an interpretation of the contract is required to establish liability. The *Gonzalez* court relied heavily on the Supreme Court's decision in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), which held that since a cause of action in tort for an insurer's bad faith refusal to honor an insured's claim is derived from an implied convenant of good faith and fair dealing found in any contract, the tort is merely a mechanism for pleading a type of contract violation to claim exemplary damages not otherwise recoverable. *Allis-Chalmers Corp.*, 471 U.S. at 217, 105 S.Ct. at 1914. According to the Supreme Court, such a tort claim was firmly rooted in the expectations of the parties as defined by their agreement. *Id.* Thus, the Supreme Court held that the tort claim must be evaluated in terms of contract law. *Id.*

■ Although *Allis-Chalmers Corp.* and *Gonzalez* addressed whether certain tort claims for punitive damages were preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1982), the rationale of these decisions applies to the present case. Here, the issue is whether

Home's refusal to honor SAC's claim constituted a breach of its implied contractual duty of good faith and fair dealing. Whether Home's acts resulted in a breach of this duty will turn on an interpretation of the terms of the insurance agreement. As in *Allis-Chalmers Corp.*, the tort claim for punitive damages is so "inextricably intertwined" with the contract that an interpretation of the contract is necessary to establish liability. An unnecessarily confusing situation would result if the law of one state is used to interpret the insurance agreement regarding the breach of contract claim and the law of a second state is applied to interpret the same agreement with regard to the bad faith claim. In light of the intervening decision of the Illinois Supreme Court in *Gonzalez*, this court elects to apply Illinois choice of law principles applicable to insurance contracts to determine whether a tort claim for bad faith seeking punitive damages can be asserted.

■ When sitting in diversity, a federal district court is required to apply the conflicts of law principles of the state in which the court resides. The well established conflicts rule in cases involving insurance agreements is that Illinois courts look to the law of the state where the insurance contract was executed. *Hamilton Die Cast Inc. v. United States F & G Co.*, 508 F.2d 417, 419 (7th Cir.1975). A contract of insurance is deemed executed at the place where the last act is done to make the policy effective. *Gray v. Penn Mutual Life Ins. Co.*, 5 Ill.App.2d 541, 126 N.E.2d 409 (1955). Thus, the first question faced by this court is where the last act occurred to put the policy into force.

As a procedural aside, this court treats Home's motion to dismiss as a Rule 56 motion for summary judgment as Rule 12(b) allows such consideration when matters outside the pleadings are presented. Here, both parties have presented exhibits, affidavits, and depositions to enable this court to determine where the insurance agreement was executed. SAC argues that because the insurance contract was physically issued by an agent of Home in Los Angeles, the law of California should apply to determine whether punitive damages for bad faith are recoverable. Although physical delivery of an insurance contract to the insured can be the last act necessary to make the policy effective, this is only the case when the terms of the insurance contract dictate such a result. *Gray v. Penn Mutual Life Ins. Co.*, 5 Ill.App.2d at 548, 549, 126 N.E.2d 409 (contract of insurance stated that if premium not paid at time of application, the contract would not come into force until policy is delivered to insured and first premium is paid). Thus, when a policy becomes effective will turn on the specific language contained in the insurance agreement.

■ The insurance contract in the present case states on its face that coverage is to be effective from January 1, 1985 to January 1, 1988. This contract was accepted and executed by Home in its New York City office and forwarded to Los Angeles, California for delivery to SAC sometime in June 1985. Under the plain language of the insurance contract, delivery to SAC was not prerequisite to coverage. In this case, the last act necessary to make the insurance contract effective was Home's acceptance and execution in New York City. As such, the law of New York will be applied to determine whether SAC's claim for punitive damages based on Home's alleged bad faith can be sustained.

Examining the law in New York on the recoverability of punitive damages for an insurer's bad faith refusal to pay, this court is compelled to grant Home's motion for summary judgment. As stated by the court in *Parks v. Cambridge Mutual Fire Ins. Co.*, 105 A.D.2d 1068, 482 N.Y.S. 382, 383 (1984):

"Punitive damages are not recoverable in an action against an insurance company based upon a claim of wrongful and bad faith refusal to pay under the terms of a policy of fire insurance. Allegations of breach of an insurance contract, even a breach committed willfully and without

justification, are insufficient to authorize such recovery ..."

■ To state a claim for punitive damages against an insurer for bad faith in New York, the insured must allege some pattern or scheme of fraudulent or deceitful dealing on the part of the insurer with the general public so as to imply criminal indifference to the insurer's civil obligations. *See Reifenstein v. Allstate Ins. Co.* 92 A.D.2d 715, 461 N.Y.S. 104, 106 (1983). The allegations of bad faith in the present case are not asserted to be part of any pattern or practice of fraudulent dealing with the public by Home. Instead, the assertion of bad faith rests upon the isolated refusal of Home to honor the claims of SAC under the insurance contract. As such, SAC's claim in Count II of its countercomplaint for punitive damages cannot be sustained. However, SAC's claim for compensatory damages resulting from Home's alleged bad faith is not subject to summary judgment. Although punitive damages may not be recoverable, New York does allow a tort cause of action for damages resulting from an insurer's bad faith refusal to honor the insured's claim. *See DeMarco v. Federal Ins. Co.,* 99 A.D.2d 114, 472 N.Y.S.2d 464, 465–66 (1984). Accordingly, summary judgment is granted in Home's favor only with regard to SAC's claim for punitive damages.

## III. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment on Count II of defendant's countercomplaint seeking punitive damages is granted.

IT IS SO ORDERED.