513 So.2d 219 (1987)
SOUTHWEST GULFCOAST, INC., D/B/a Southwest Forest Industries, Appellant,
v.
Earl ALLAN, Jr., Appellee.
No. BJ-333.
District Court of Appeal of Florida, First District.
September 24, 1987.
*220 G. Thomas Harper of Haynsworth, Baldwin, Miles & Bowden, Jacksonville, for appellant.
Jack G. Williams of Bryant, Higby & Williams, Panama City, for appellee.
ZEHMER, Judge.
This is an interlocutory appeal pursuant to rule 9.130, Florida Rules of Appellate Procedure. Southwest Gulfcoast, Inc., doing business as Southwest Forest Industries, seeks review of a circuit court order denying its motion to dismiss appellee's complaint for lack of subject-matter jurisdiction. The question before us is whether Allan's cause of action, based on section 440.205, Florida Statutes (1983), alleging he was wrongfully discharged by Southwest Forest for filing a workers' compensation claim, is preempted by section 301 of the federal Labor Management Relations Act, 29 U.S.C.A., section 185. The decision in this case will undoubtedly have significant impact on the manner in which the Florida workers' compensation law can be enforced, as well as state/federal relations in respect to the administration of that law. For the reasons hereafter expressed, we affirm the appealed order upon the conclusion that section 301 has not preempted state enforcement of section 440.205.
Allan's complaint, filed March 28, 1985, alleged that he was an employee and that Southwest Forest was an employer within the meaning of section 440.205, Florida Statutes.[1] In January 1985 Allan injured his back during the course of his employment with Southwest Forest and made a claim for workers' compensation benefits under chapter 440. Allan further alleged that until February 25, 1985, he was under the care of a physician and prohibited by that physician from returning to work; that upon being released to return to work on February 26 he was informed by Southwest Forest that he was "suspended from work for allegedly engaging in physical activities while under a doctor's care with which SWF did not agree"; and that on March 4, 1985, "SWF wrongfully and unlawfully discharged Allan in retaliation for Allan pursuing his Workmens [sic] Compensation Claim." The first count claimed compensatory damages. The second count alleged additional facts to support the contention that Southwest Forest acted willfully, wantonly, and with reckless indifference to Allan's rights, and demanded punitive damages. A third count alleged a conspiracy claim against Southwest Forest and NYCO, a corporation engaged in private *221 investigation work, arising out of the latter's surveillance of Allan while off work during February 1985.[2]
Southwest Forest filed an answer admitting the employer/employee relationship but denying most of the substantive allegations of wrongdoing. Additional defenses alleged were that: (1) The complaint fails to state a cause of action upon which relief may be granted (without specifying explicit grounds and substantial matters of law to be argued); (2) Southwest Forest had in no way violated Allan's rights under section 440.205 but, rather, Allan "gave false information to the Defendant during its investigation of this matter," and thus Allan "was discharged for good and sufficient cause" and not "to deter or prevent Allan or other employees from filing legitimate claims under the workers' compensation statute"; and (3) any award of damages should be mitigated by the workers' compensation benefits paid by Southwest Forest or any wages earned by him after discharge.
On July 22, 1985, allegedly as the result of further information developed during discovery, Allan filed a motion for leave to amend his complaint for the purpose of asserting a class action on behalf of some twenty former employees of Southwest Forest who were discharged after being injured on the job and claiming or attempting to claim workers' compensation benefits. The motion alleged that these former employees were discharged for making such claims, rather than for the "pretexual [sic] reason assigned" by Southwest Forest for their discharge. Although Southwest Forest strongly opposed this motion in a detailed legal memorandum, the motion was eventually granted, on October 15, 1985, the same day the appealed order was rendered.
On September 26, 1985, Southwest Forest filed its motion to dismiss for lack of subject-matter jurisdiction, specifying as the sole ground that plaintiff's "tort action" is preempted by federal law. The motion alleged that Allan is "a party to the collective bargaining agreement" between the unions and Southwest Forest and "must resort to the contractually agreed upon grievance arbitration mechanism as the exclusive means of resolving this dispute," so that Allan's "action is preempted by federal law holding that an employee claiming a breach by his employer of the collective bargaining agreement's just cause provisions is bound by the terms of that agreement as to the method of enforcing his contractual rights." The motion was accompanied by a detailed legal memorandum, a copy of the alleged collective bargaining agreement, the grievance complaint filed by the electrical workers' union regarding Allan's discharge and requesting his reinstatement, and the employer's complaint report made in response.[3] The employer's report indicates that Allan's superintendent denied the requested relief, stating as the reason therefor that Allan reported an injury on the job and was subsequently off work and received workers' compensation benefits, but that "information available to us indicates that he claimed disability benefits under false pretense, and gave false information to us concerning his injury and conduct while he was away from work." No further explanation of the false information appears in the record.
In opposition to this motion, Allan filed an affidavit stating he was not a member of the union and had not been a member since his resignation from the union in 1982. On October 14, 1985, Southwest Forest filed an amended answer which included as an additional defense the grounds of its motion to dismiss. The court denied the motion to dismiss without explanation in the order dated October 15, which Southwest Forest has appealed.
*222 Appellant's brief raises three points. First, Southwest Forest contends that the state court lacks jurisdiction based on federal preemption. Second, it argues that Allan's action should be dismissed because he failed to exhaust his contractual remedies. Third, Southwest Forest argues that doctrines of preemption and exhaustion of remedies apply even though Allan was not a member of the union.
Appellee makes no issue of the third point. We assume, without necessarily deciding, that for purposes of this appeal Allan's employment was covered by the collective bargaining agreement referred to in Southwest Forest's motion to dismiss, and we do not, therefore, discuss that issue further.
Southwest Forest's second point was not raised in its motion to dismiss and was not ruled on in the appealed interlocutory order. Moreover, this appeal is perfected under rule 9.130, Florida Rules of Appellate Procedure, which authorizes review of the denial of the motion to dismiss only for lack of jurisdiction. Appellant's second point, therefore, is not properly before us on this appeal and may not be considered.
Appellant's jurisdictional point is premised primarily on the provisions of section 301 of the Labor Management Relations Act[4] and the Supreme Court's decision in Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Southwest Forest contends that Allan is covered by the collective bargaining agreement (labor agreement) between the Electrical Workers' Union and Southwest Forest, which agreement provides the terms of Allan's employment and contains restrictions on Southwest Forest's right to discipline and discharge him from employment, as well as grievance and arbitration provisions for formal protest and resolution of disputes over the propriety of any discharge. Specifically, the labor agreement provides that discharge from employment must be "based on just and sufficient cause." Thus, Southwest Forest contends, any complaint regarding Allan's discharge is a matter to be adjusted as a grievance under the agreement, and Allan's state action "in tort" under section 440.205 is preempted by section 301 as construed by the Supreme Court in Allis-Chalmers.
We recognize that several recent court decisions have interpreted Allis-Chalmers to mean that section 301 preempts a state's judicially created common law action against an employer to redress an employee's discharge in retaliation for filing a workers' compensation claim where the employment relationship is governed by a collective bargaining agreement that provides for grievance and arbitration procedures subject to the Labor Management Relations Act. E.g., Lingle v. Norge Division of Magic Chef, Inc., 823 F.2d 1031 (7th Cir.1987) (en banc); Vantine v. Elkhart Brass Manufacturing Co., 762 F.2d 511 (7th Cir.1985); Northwest Industrial Credit Union v. Salisbury, 634 F. Supp. 191 (W.D.Mich. 1986); Cox v. United Technologies, 240 Kan. 95, 727 P.2d 456 (1986); Brinkman v. Montana, 729 P.2d 1301 (Mont. 1986). Those cases effectively stand for the proposition that an employee's wrongful discharge, regardless of the reason therefor, is necessarily predicated only upon the interpretation of provisions in the employment contract relating to discharge and must, therefore, be treated as a matter of federal law, regardless of the presence of state law provisions that may bear on the rights of the parties and the legality of their conduct.
On the other hand, a number of recent court decisions have held to the contrary, reasoning that the employee's claim for wrongful discharge under the particular facts of the case did not depend on reference to and interpretation of the employment agreement, but only upon consideration of legal rights protected by state law, independent of that agreement. In such instances the courts found no basis for applying the federal preemption doctrine *223 under section 301 as construed in Allis-Chalmers. E.g. Baldracchi v. Pratt & Whitney Aircraft Division, 814 F.2d 102 (2d Cir.1987); Gonzalez v. Prestress Engineering Corp., 115 Ill.2d 1, 104 Ill.Dec. 751, 503 N.E.2d 308 (1986); cf. Garibaldi v. Lucky Food Stores, Inc., 726 F.2d 1367 (9th Cir.1984), cert. denied, Lucky Stores, Inc. v. Garibaldi, 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985); Peabody Galion v. A.V. Dollar, 666 F.2d 1309 (10th Cir.1981). Only Baldracchi, of all the cases coming to our attention, involves a statutory provision similar to section 440.205, and that case found no preemption in respect to the employee's enforcement of the statute in a state court action against the employer.
In view of the divergent reasoning and, ostensibly, irreconcilable results in the various cases, it is prudent to accept the Supreme Court's admonition in Allis-Chalmers that "the full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis" (471 U.S. at 220, 105 S.Ct. at 1916, 85 L.Ed.2d at 221), and thus analyze the rationale of that decision to determine precisely how it applies to the facts of this case.
In Allis-Chalmers the employee, Lueck, suffered a nonoccupational back injury and sought disability benefits under a plan provided by the employer pursuant to the collective bargaining agreement. The disability plan was fully funded by Allis-Chalmers and administered by Aetna Life & Casualty Company. After encountering numerous problems in receiving payment under the plan, Lueck filed a tort action in a Wisconsin state court, alleging bad faith on the part of the employer and its managing agent in handling his claim. Most notably, for purposes of the discussion here, the disability plan was incorporated by reference into the collective bargaining agreement, which contained extensive provisions for processing disputes involving insurance-related issues, and provided for submitting insurance grievances to binding arbitration. Lueck never sought arbitration of this dispute but, rather, went directly to state court on a judicially created tort claim under state law. The Wisconsin Supreme Court upheld his state cause of action against a charge of federal preemption.
The Supreme Court reversed, holding that resolution of the disputed disability payments was expressly governed by the labor agreement and subject to arbitration under that agreement. The state tort action was preempted by federal law because the scope of Allis-Chalmers' duty to deal fairly with Lueck was, under the state's decisional law, dependent upon an interpretation of the provisions of the labor agreement, which was a matter of federal labor contract law under section 301. In reaching this result, the Court first observed that Congress "has never exercised authority to occupy the entire field in the area of labor legislation," noting in a footnote, "We cannot declare pre-empted all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions; obviously much of this is left to the States." 471 U.S. at 208, n. 4, 105 S.Ct. at 1910, n. 4, 85 L.Ed.2d at 213, n. 4. Reaffirming that whether a certain state action is preempted by federal law is one of congressional intent, and noting that Congress did not state explicitly to what extent section 301 was intended to preempt state law, the Court stated, "In such instances courts sustain a local regulation `unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States.'" Id. at 209, 105 S.Ct. at 1910, 85 L.Ed. at 213-14. Thus, the Court concluded, the question before it was "whether this particular Wisconsin tort, as applied, would frustrate the federal labor-contract scheme established in § 301." Id. at 209, 105 S.Ct. at 1910, 85 L.Ed.2d at 214.
The Court's opinion next emphasized the primacy of federal labor law and the necessity for consistent interpretation of provisions in collective bargaining contracts subject to federal law to avoid the "possibility of conflicting substantive interpretations under competing legal systems." Id. at *224 210, 105 S.Ct. at 1911, 85 L.Ed.2d at 214. Thus, determination of what the parties agreed to and what legal consequences flow therefrom must be resolved by resort to federal law, "whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." Id. at 211, 105 S.Ct. at 1911, 85 L.Ed.2d at 215. To this extent, therefore, state law could not determine the rights of the parties under the agreement. The court, however, also cautioned:
Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by s. 301 or other provisions of the federal labor law. Section 301 on its face says nothing about the substance of what private parties may agree to in a labor contract. Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the pre-emptive effect of s. 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.
Therefore, state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements. [Citation omitted.] Our analysis must focus, then, on whether the Wisconsin tort action for breach of the duty of good faith as applied here confers non-negotiable state law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted.
Id. at 212-13, 105 S.Ct. at 1911-12, 85 L.Ed.2d at 215-17 (emphasis added).
The Court then analyzed several Wisconsin appellate decisions and observed that the judicially created implied duty to act in good faith could be determined under those decisions only by reference to the contract provisions and their interpretation. Accordingly, the Court stated, "The right that Lueck asserts is rooted in contract... . [u]nless federal law governs that claim, the meaning of the health and disability-benefit provisions of the labor agreement would be subject to varying interpretations, and the congressional goal of a unified federal body of labor-contract law would be subverted." Id. at 220, 105 S.Ct. at 1916, 85 L.Ed.2d at 221. Again, however, the Court cautioned against overextending the scope and effect of its opinion:
It is perhaps worth emphasizing the narrow focus of the conclusion we reach today. We pass no judgment on whether this suit also would have been pre-empted by other federal laws governing employment or benefit groups. Nor do we hold that every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by § 301. The full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis. We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, [citation omitted] or dismissed as pre-empted by federal labor-contract law.
Id. at 220, 105 S.Ct. at 1916, 85 L.Ed.2d at 221 (emphasis supplied).
*225 It seems perfectly clear that the Allis-Chalmers decision has approved federal preemption in labor litigation only in those cases where the right under state law sought to be enforced in a state court action has its genesis in the terms of the labor contract and resolution of the dispute requires reference to and interpretation and application of that contract in accordance with federal labor contract law. The Court determined to apply preemption because the legal right asserted by Lueck depended, under state law, entirely upon the provisions of the labor contract and interpretation thereof. We do not, however, overlook the Court's repeated disavowal of any congressional intention to preempt all areas of labor law and its recognition that Congress has left considerable room for the operation of state laws governing the employee/employer relationship, without infringing upon the exclusive area of federal labor contract law. The area left to the states most certainly includes regulation of workers' compensation rights.
That the decision in Allis-Chalmers was intended to have limited application in respect to state rights created independently of the labor contract was reinforced this year by the Supreme Court's decisions in Caterpillar, Inc. v. Williams, ___ U.S. ___, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), and International Brotherhood of Electrical Workers v. Hechler, ___ U.S. ___, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987).
The Second Circuit, in Baldracchi v. Pratt & Whitney Aircraft Division, 814 F.2d 102, likewise concluded that Allis-Chalmers must be given this more restrictive interpretation in the course of deciding that an employee's state court action to enforce a state statute prohibiting retaliatory discharge for filing a workers' compensation claim was not preempted by section 301. In that case Baldracchi, an employee of Pratt & Whitney, was discharged from employment and filed suit in state court under section 31-290a, Connecticut General Statutes, claiming wrongful discharge for filing a workers' compensation claim. The Connecticut statute is similar to the Florida statute and provides that "no employee who is subject to the provisions of [the Connecticut workers' compensation law] shall be discharged or caused to be discharged or in any manner discriminated against by any employer because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded him pursuant to the provisions of this chapter." Baldracchi, 814 F.2d at 103. Pratt & Whitney removed the action to federal court on the ground that Baldracchi was covered by a collective bargaining agreement and that the state action was preempted by federal labor law. The federal district court denied the employee's motion to remand and thereafter dismissed the action for failure to state a claim against the defendant.
Reversing, the court of appeals found no congressional intent to preempt the state law rights upon which the action is based because the employee's claim is not dependent on the collective bargaining agreement. Under the state statute, the employee need only prove that she had, in fact, been fired for filing a workers' compensation claim. To defeat the claim, Pratt & Whitney would have to demonstrate only that the employee had been fired for another nonpretextual reason. Although Pratt & Whitney would have to show that the reason given is more than a pretext, it would not have to establish that the reason amounts to just cause under the labor contract. Moreover, the rights provided by the statute could not be bargained away in the collective bargaining agreement. Accordingly, the court concluded, the employee's legal right underlying the cause of action is not dependent upon the collective bargaining agreement. The court also observed that, even though in determining damages it may become necessary to look to the labor contract to ascertain the wage rate, etc., the labor contract does not operate to preempt the state statute because, as the Court said in Allis-Chalmers, not every dispute tangentially involved with the labor contract falls under section 301.
The court found further support for its decision in the following considerations. First, the court noted that finding no preemption *226 is supported by the Supreme Court's disposition of the appeal in Pan-American World Airways v. Puchert, 472 U.S. 1001, 105 S.Ct. 2693, 86 L.Ed.2d 710 (1985). In that case, the Supreme Court of Hawaii had held in Puchert v. Agsalud, 67 Hawaii 225, 677 P.2d 449 (1984), that the Railway Labor Act, 45 U.S.C. § 151, et seq., did not preempt a state statute prohibiting discharge in retaliation for filing a workers' compensation claim. The Supreme Court dismissed the appeal of that decision for want of a substantial federal question. The Second Circuit observed that if "the Hawaii law were preempted by the RLA, the case would necessarily have presented the Court with a substantial federal question." Baldracchi, 814 F.2d at 106. Thus, the Supreme Court's decision in Puchert suggests that the Connecticut statute is not preempted by federal law. Second, the court observed that the provision in 28 U.S.C. § 1445(c), precluding the removal of state workers' compensation actions to federal court, is an indication of "congressional intent not to interfere with state protection of workers' compensation rights." Id. at 107. Third, the court expressed equal-protection concerns because application of preemption to the statutory right being asserted by Baldracchi would mean less protection to workers under collective bargaining agreements than that enjoyed by employees not covered by such agreements.
The decision in Baldracchi is not distinguishable on the issue presented in this case. That is the only case passing on the question of preemption in which the state cause of action is based on a state statutory right existing independently of the labor contract.[5]
We are told in Allis-Chalmers that Congress has not preempted all local legislation that touches or concerns in any manner the complex interrelationships between employers, employees, and unions, and that much is left to the states so long as state law does not conflict with federal law or frustrate the federal statutory scheme. Nothing in this record or in the law generally suggests that Florida's efforts to statutorily regulate workers' compensation rights between this employer and its employees in any conflict with federal law or would frustrate the federal scheme in regard to labor contracts. Certainly, Congress has not preempted the area of workers' compensation law; to the contrary, it has directed, by precluding removal of such actions, that such disputes be left to state resolution. 28 U.S.C.A. § 1445(c). There is simply no basis for concluding that every requirement of the Florida workers' compensation law is not binding on the parties to this case. The labor agreement makes no provision whatsoever regarding the handling of claims for injuries to employees on the job, undoubtedly because both the employer and the unions recognize that this is a matter of state regulation through its workers' compensation law. Rather, the record indicates that Southwest Forest paid benefits to Allan under the Florida statute for the period of time Allan was off work. It cannot be seriously suggested that the parties could enter into a labor contract in which they privately agree that the workers' compensation act would be inapplicable. Any agreement by an employee to waive his right to compensation under chapter 440 is declared invalid by statute. § 440.21, Fla. Stat. (1983). Similarly it *227 would be illegal for the parties to a collective bargaining agreement to attempt, by that agreement, to waive the employee's right under section 440.205 not to be discharged in retaliation for filing a workers' compensation claim.
The Court cautions in Allis-Chalmers that section 302 "does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law," and that "it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." 471 U.S. at 212, 105 S.Ct. at 1912, 85 L.Ed.2d at 216. Section 440.205, as do the other provisions in chapter 440, "confers non-negotiable state law rights on employers or employees independent of any right established by contract"; therefore, these workers' compensation rights, by definition, cannot be treated as governed in any part by the collective bargaining agreement, much less considered "inextricably intertwined with consideration of the terms of the labor contract." Id. at 213, 105 S.Ct. at 1912, 85 L.Ed.2d at 216-17. This is not a case where, as in Allis-Chalmers, the state tort depended upon the explicit provisions of the labor contract as the basis for the duty said to have been breached. The critical difference between that case and this one is the Court's determination that Wisconsin case law resorts to analysis of the terms and provisions of the collective bargaining agreement to determine the existence and extent of the legal duty owed by the employer to the employee.
Southwest Forest does not identify with the detailed precision found in the Allis-Chalmers opinion which provisions of the labor agreement in the present case must be referred to, analyzed, and interpreted in order to define the legal right being asserted by Allan. Neither does Southwest Forest explain in which respects Allan's alleged wrongful discharge claim is inextricably intertwined with consideration of the labor contract. Reference to the agreement's provision that discharge from employment must be "based on just and sufficient cause" is not necessary because the statutory right under section 440.205 exists independently of the agreement and cannot be modified or waived by the agreement. In short, Southwest Forest fails to show how the enforcement of section 440.205 will conflict with federal labor contract law or frustrate the federal scheme if enforced in appellee's state court action. To define Allan's right of action under the state statute, there is no need for reference to the labor agreement and interpretation through federal arbitration to avoid the "possibility of conflicting substantive interpretations under competing legal systems." 471 U.S. at 210, 105 S.Ct. at 1911, 85 L.Ed.2d at 214.
Southwest Forest bases its position almost entirely on the statements of the Court in Allis-Chalmers that:
Since nearly any alleged willful breach of contract can be restated as a tort claim for breach of a goodfaith obligation under a contract, the arbitrator's role in every case could be bypassed easily if § 301 is not understood to pre-empt such claims. Claims involving vacation or overtime pay, work assignment, unfair discharge  in short, the whole range of disputes traditionally resolved through arbitration  could be brought in the first instance in state court by a complaint in tort rather than in contract. A rule that permitted an individual to side-step available grievance procedures would cause arbitration to lose most of its effectiveness [citation omitted], as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.
At 219-20, 1915-16, 85 L.Ed.2d at 220-221 (emphasis added). Reliance on this wording of the opinion is totally misplaced, however, because it was not shown that resort to an interpretation of the labor contract itself is necessary to define the state right being asserted. Here, unlike Allis-Chalmers, the workers' compensation statute operates independently of the agreement, and no reference to the agreement is necessary to define the state right. As the *228 scope of that right is clearly set forth in the statute, there is no fear that the state court action will deprive the arbitrator of his agreed upon jurisdiction to interpret and apply the contract.[6] No doubt, the Court's reference to "unfair discharge" as one of the "range of disputes traditionally resolved through arbitration" is generally true.[7] If the issue before us were whether the reason for discharge given by Southwest Forest constituted "just and sufficient cause," there might be some definable reason to refer the matter to arbitration. No one, however, seriously contends that an employee's dishonesty in respect to his employer in the course of making a claim for compensation benefits would not constitute "just and sufficient cause under the Agreement." The crux of the court action asserted by Allan is not whether the stated ground for discharge amounted to good cause; it is whether Southwest Forest acted illegally, under Florida law, by retaliating against Allan for his having filed a workers' compensation claim. In view of the fact that Southwest Forest has admitted the sole reason for having discharged Allan as his having filed an allegedly false claim, whether or not Allan's alleged basis for the workers' compensation claim is true or false, is more properly adjudicated under the workers' compensation law than in a federal arbitration proceeding. Nothing before us establishes that it is the traditional role of arbitration under federal labor statutes to adjudicate the validity of workers' compensation claims. Indeed, it might well be argued that Southwest Forest is attempting to coerce arbitration to avoid the state forum by discharging Allan on the stated ground of filing a false claim.
For the foregoing reasons, federal preemption does not apply in this case. The appealed order denying the motion to dismiss for lack of subject matter jurisdiction is AFFIRMED.
JOANOS, J., concurs.
CAWTHON, VICTOR M., Associate Judge, dissents.
NOTES
[1] Section 440.205 provides:

Coercion of employees.  No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law.
[2] NYCO's motion to dismiss the third count for failure to state a cause of action was granted by the trial court and is not involved on this appeal.
[3] Neither the motion nor the memorandum was sworn to or accompanied by an affidavit identifying the attached documents. Because no point concerning any deficiency in this proof for purposes of the jurisdiction motion to dismiss has been raised on this appeal, however, we consider these documents as properly before the trial court and this court.
[4] Section 301 provides in part: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C.A. § 185(a).
[5] It should be noted that the court in Lingle v. Norge Division of Magic Chef, Inc., 823 F.2d 1031 (7th Cir.1987), purported to extend the effect of its decision to rights created by state statute even though the state right involved in that case was a judicially created common law tort. Such statements are, of course, mere dictum. More importantly, however, that court's reasoning for extending the Allis-Chalmers holding to state workers' compensation statutes is patently faulty, not only for the reasons expressed in the dissent of Judge Ripple, 823 F.2d at 1051, and the Baldracchi decision, but also for the reason that the court's attempt to dispose of this issue with such a broad brush, without consideration of the precise state statute and the terms of the labor contract involved, is nothing short of judicial legislation, and violates the Supreme Court's admonition in Allis-Chalmers to decide these issues on a case-by-case basis. Moreover, we are unable to reconcile the majority decision in Lingle with the recent holding of the Supreme Court in Caterpillar, Inc. v. Williams, ___ U.S. ___, 107 S.Ct. 2425, which was cited merely as "cf." by the Lingle majority.
[6] Section 7.02 of the labor agreement provides that the "functions of the arbitrator shall be to interpret and apply the Agreement and he shall have no power to add to or subtract from or to modify any of the terms of the Agreement."
[7] Judge Ripple's comment on this generality is most appropriate:

In analyzing the preemptive effect of § 301, the general tort of wrongful discharge must be distinguished from the tort of retaliatory discharge for having sought protection of a state's workers' compensation scheme. In the general wrongful discharge claim, the cause of action may well be premised on activity directly covered by the collective bargaining agreement. See, e.g., Bale v. General Tel. Co. of Cal., 795 F.2d 775, 780 (9th Cir.1986). However, in the present retaliatory discharge claim, the cause of action arises from the state's important public policy interest  independent of the collective bargaining agreement  in preserving its workers' compensation system. A state has a strong interest in protecting its employees through its workers' compensation scheme and tribunal and can, if it chooses, protect those workers from retaliation for seeking assistance from this program.
Lingle, 823 F.2d at 1053-54 (dissenting).