Duane BREWER et al.,
Plaintiffs-Respondents,

v.

ARGO–COLLIER TRUCK LINES COR-
PORATION, Defendant-Petitioner.

Supreme Court of Tennessee.

Dec. 31, 1979.

James N. Clay, III, Memphis, for defend-
ant-petitioner.

L. L. Harrell, Jr., Harrell & Harrell,
Trenton, for plaintiffs-respondents.

## OPINION

HENRY, Justice.

The primary question raised by this cer-
tiorari proceeding is whether state or feder-
al law governs in a suit instituted under a
collective bargaining agreement.

## I.

### Statement of the Case

#### a. The Pleadings

This suit was instituted by twenty-four (24)[1] over-the-road drivers against their employer, Argo-Collier Truck Lines Corporation, seeking to recover additional compensation under a contract between Argo-Collier and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. This contract, known as the Master Freight Agreement, covered the period April 1, 1970, through June 30, 1973.[2]

Plaintiffs allege that they are members of Local 710 of the International Brotherhood of Teamsters, etc., and that under the contract their compensation was fixed at twenty-six (26%) percent of the gross revenue generated by the trucks driven by them. They charge that Argo-Collier paid them only twenty (20%) percent and failed to pay certain fringe benefits provided for in the contract.

Each plaintiff alleged the amount due him for an unspecified period of time, and failure to pay the amounts claimed after demand, and prayed for an appropriate award.

Argo-Collier moved for summary judgment on the grounds that the complaint fails to state a claim upon which relief can be granted, and supported its motion by the affidavit of its President. This affidavit set forth Article 45, Section 4 of the agreement as follows:

> Any claim by a driver for additional wages or benefits must be presented in writing within *thirty (30) days from the end of the month in which the alleged claim arose.* Failure to submit a claim within said thirty (30) days shall automatically bar any such claim from being presented to or against said carrier either under this Rider or otherwise provided however, that in the case of separate agreements, express or implied between employer and employee contrary to the terms of this Rider or the Agreement, the thirty (30) day limitation shall not apply.[3] (Emphasis supplied)

The affidavit sets forth the names of nine (9) plaintiffs who have not filed any claim or grievance against the company, along with the names of fourteen (14) who had filed grievances. It asserts the understanding of Argo-Collier that these grievances were upheld by the Grievance Committee and that each claimant had been told to present his claim to the company for payment. Two (2) such claims were presented after this suit was filed and a check representing full payment was tendered into court pending the determination of this controversy.

Without citation to the record, counsel, on brief, asserts that "[a]s to those plaintiffs who had properly filed a grievance under Article 45, Section 4 of the contract and to the extent the Grievance Committee had ruled against the Company, it confessed judgment." We find nothing in the record to support this assertion. *See* Section III, *infra.*

Counter-affidavits by two (2) of the plaintiffs were filed, as was an affidavit by the former Board Chairman of Argo-Collier. The contents of these affidavits are not necessary to the present narration.

In June 1975, the regular Chancellor denied the motion for summary judgment and granted a discretionary appeal. Subsequently, he enlarged the time for this appeal. In July 1975, Argo-Collier petitioned

---

1. After suit was filed various other drivers similarly situated were permitted to join as plaintiffs and one (1) original plaintiff entered a disclaimer and was dismissed.

2. Actually this was an industry-wide negotiated contract signed by a committee composed of Union representatives and representatives of numerous named trucking employers. There was a special commodity rider, also industry-wide in character, negotiated by representatives of the Union and of various employee groups. This latter document was signed by Argo-Collier's Board Chairman and by a representative of the Union, and approved by Frank E. Fitzsimmons, General Vice President of the International Brotherhood of Teamsters, etc.

3. It was not contended that there was any separate agreement.

the court to rehear the summary judgment denial. This petition was never acted upon.

The next step in the proceeding was an amendment filed on August 11, 1975. It was allowed by order signed June 10, 1976, entered March 10, 1977, "nunc pro tunc on this the ____ day of February 1977." Absent complaint about this procedure, we treat the amendment as having been made as of the date of the original filing and, therefore, before the bulk of the depositions and interrogatories were taken and filed.

At some time, apparently after June 10, 1976 (the date of the nunc pro tunc order), but before the designated Chancellor filed his memorandum on March 8, 1977, the regular Chancellor recused himself. The record does not show the recusal.

At some time during this period the Chief Justice apparently designated a retired Chancellor to hear and determine this controversy. The record does not show.

We digress to say that we find no excuse or justification for the presentation to the appellate courts of a record so utterly defective in material particulars. Lawyers have an obligation to build an accurate record and clerks should not have to be reminded of the necessity for showing recusals and designations. Under the circumstances, we assume the amendment was properly allowed; we assume that the sitting Chancellor recused himself; and we assume a proper designation was made.

The amendment allowed by the court charges fraud in general terms. All charges relate to compensation. Plaintiffs, in substance, charge that Argo-Collier made "deliberate miscalculations of compensation due the plaintiffs"; that these miscalculations were "hidden, disguised, and secreted" so that they were "unable to check, verify, or audit" their compensation; that it misrepresented the gross income on loads; and that it withheld information and records necessary for them to determine the actual amount of compensation owing them. It is important to note that there is no semblance of a charge that there was any fraud in the inception of the contract.

### b. Action of the Trial Judge

The Trial Judge handed down a comprehensive memorandum. He held that there was a disputed issue of fact, i. e., whether Argo-Collier complied with Article 54, Section 1(a) of the Agreement. This section provides that drivers are to receive "26% of gross revenue as wages." We concur in this conclusion.

However, he held the compelling question to be whether "the grievance arbitration procedure [in the contract] has to be exhausted before recourse can be had to the courts."

In response to this question, the Chancellor held:

The Supreme Court of Tennessee addressed this question in 1928 in the case of Cross Mountain Coal Co. v. Ault, 157 Tenn. 461, 9 S.W.2d 692. In that case the Court held that an employee member of a union did not have to exhaust the contractual remedies prior to his filing suit. Clearly, the law of this state, without any countervailing authority, would permit the maintaining of this matter.

The Federal authorities hold a contrary position. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 [1965]. Since the adoption of the Labor Management Relations Act of 1947, 29 U.S.C. Sec. 185, the Supreme Court of the U.S. has held "Federal law is paramount and in case of conflict, the state must give way." Local 174, Teamsters etc. v. Lucas Flour Co., 359 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

In the instant case while the state law has remained unchanged by either the General Assembly or the Supreme Court of Tennessee since it was declared in 1928, the Supreme Court of the United States has effectively changed this state law in Republic Steel Corp. v. Maddox, supra.

Thereafter the Trial Judge held that "a careful reading of this evidence by the Court gives no indication of any fraudulent conduct on the part of the defendant that would effectively prevent the court from

taking this action." We concur that this record does not support the amended charges of fraud.

Thereafter, the Court sustained the motion for summary judgment as to all plaintiffs who had not filed a grievance under Article 45 of the contract and overruled as to all others. The order follows the memorandum, except that it awards judgment to thirteen (13) named plaintiffs in the sums approved by the Grievance Committee.

Analyzing the memorandum and order of the Chancellor, it is evident that he held (1) that there was a genuine dispute as to whether Argo-Collier had complied with the contractual provisions relating to compensation; (2) that federal law governed; (3) that certain claimants had not followed the grievance procedure and were entitled to no recovery; and (4) that those claimants who had followed the grievance procedure set forth in the contract were entitled to recover.

### c. *The Appeal to the Court of Appeals*

The plaintiffs prayed for, were granted, and perfected an appeal. On appeal plaintiffs asserted that they did not take exception to so much of the Trial Judge's order as awarded judgment to those who had filed claims. The record does not bear this out. All plaintiffs made an undifferentiated exception and all appealed.

The Court of Appeals held that federal substantive law governs this action, but this does not forbid the filing in state court; that an aggrieved employee must follow the grievance procedure set forth in Article 45, Section 4 of the contract. The Court specifically held that "the Chancellor correctly considered the applicable law."

The Court expressed concern over the charge of fraud. Speaking in terms of a "secret arrangement" between Argo-Collier and Local 710, of "collusion between the contracting parties," the Court concluded that "there is a genuine issue on the question of *fraud in the inception of the contract*," and this fraud if proved was sufficient to excuse compliance with the grievance procedure. Therefore, the Court held that there were genuine issues of material facts.

We note that the original complaint did not charge fraud in any form. The amended complaint charged fraud, but only in the matter of computation of compensation. Neither error assigned on appeal, nor the supporting brief even suggested fraud in the inception of the contract. The holding of the Court of Appeals operates to thrust the plaintiffs into an anomalous position. On the one hand they seek to enforce the compensation agreed to in the collective bargaining agreement and on the other, if the Court of Appeals opinion stands, the contractual basis for their suit must fail. There was no issue in this lawsuit on the trial or appellate level of fraud in the inducement of the contract. The basic issue before the Court of Appeals was whether state or federal law governed the lawsuit.

We deal with an industry-wide contract. The base agreement had numerous parties signatory, the rider was individualized as to Argo-Collier only to the extent of the insertion of its name in a "central States Area Iron and Steel and Special Commodity Rider Covering Employees by Private, Common and Contract Carriers." It was arrived at by negotiation with all interests represented and protected. We find nothing in this record which is suggestive of a secret agreement.

### II.

As the case comes to us, the action of the Chancellor has been reversed and the case remanded to the Chancery Court for trial on the merits.

While there was a sharp factual dispute as to whether Argo-Collier abided the language of the contract in the area of compensation, this issue is neither controlling nor material. This was a suit for additional wages or benefits. The governing contract (Art. 45, Sec. 4) provides that such a claim "must be presented in writing within thirty (30) days from the end of the month in which the alleged claim arose." It further provides that failure to make a timely claim

"shall automatically bar any such claim from being presented to or against said carrier. . . . "

▮▮ While a cause of action for a deficiency in wages under a collective bargaining agreement may be brought in state court, *Smith v. Evening News Assn.*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), federal substantive law applies to suits arising from collective bargaining agreements covered by Section 301(a) of the *Labor Management Relations Act* (29 U.S.C. Section 185(a)). *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Collective bargaining contract grievance procedures must be followed. *Id.* Thus, as a general rule, a suit will not lie in either state or federal court. As the United States Court of Appeals for the Sixth Circuit phrased it in *Chambers v. Beaunit Corporation*, 404 F.2d 128 (6th Cir. 1968):

> The merits of a dispute subject to an arbitration clause in a collective bargaining agreement is outside the purview of judicial examination or consideration. A party is *entitled to no more than he bargained for and received under the contract.* (Emphasis supplied). 404 F.2d at 131

Here, the contract under which plaintiffs seek to recover provides a specific grievance procedure governing the presentation of claims and clearly and automatically bars the prosecution of any claim not so presented for adjudication.

In *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the rule is phrased thusly:

> Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement. 386 U.S. at 184, 87 S.Ct. at 914, 17 L.Ed.2d 854.

## III.

▮▮ We affirm so much of the decision of the Chancellor as sustained the motion for summary judgment as to all parties plaintiff who did not follow the contractual grievance procedure.

▮▮ It will be noted that the Trial Judge by final order awarded judgment to those employees who did pursue the grievance procedure. Thus, in effect, summary judgment was rendered in favor of a nonmoving party. In *Thomas v. Transport Ins. Co.*, 532 S.W.2d 263 (Tenn.1976), we said:

> Although this Court has not previously spoken on the subject, we are of the opinion that a trial judge may grant a motion for summary judgment in favor of a nonmoving party. See 6 Moore's Federal Practice, § 56.–12. We are of the opinion, however, that such action on the part of the trial judge should be taken only in rare cases and with meticulous care. 532 S.W.2d at 266.

We believe this is a "rare" case and that the summary judgment was proper. Argo-Collier did not appeal these awards. Plaintiffs, on appeal to the Court of Appeals, insist that they did not except to these awards. Argo-Collier insists that it confessed judgment as to the plaintiffs who followed the contractual grievance procedure. Neither the fact nor the amount of these judgments were an issue before the Court of Appeals or in this Court. We, therefore, believe that lawyer, litigant and judicial economy dictate an affirmation of the Trial Judge in this respect, as opposed to reversing on a naked legal proposition when the results are foreordained.

We reversed the Court of Appeals and affirm the action of the Trial Court.

BROCK, C. J., and FONES, COOPER and HARBISON, JJ., concur.