Riley C. BLAIR, Plaintiff/Appellant,

v.

ALLIED MAINTENANCE CORPORA-TION and James Oakley, Defendants/Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 20, 1988.

Published in Accordance with Tenn.Ct.App.R. 11.

Michael J. Passino, Jane P. North, Passino, DeLaney & Hildebrand, Nashville, John G. Mitchell, Murfreesboro, for plaintiff/appellant.

Todd J. Campbell, Joseph Martin, Jr., Gullett, Sanford, Robinson & Martin, Nashville, for defendants/appellees.

## OPINION

KOCH, Judge.

This appeal involves a workplace altercation between an employee and his supervisor. The employee filed an action for assault, outrageous conduct, and breach of implied contract in the Circuit Court for Rutherford County against his supervisor and his employer. The defendants filed a motion for summary judgment, stating that the employee's suit was preempted by federal labor law and that his remedies were limited to those available under the Workers' Compensation Law or the collective bargaining agreement. The trial court granted the defendants' motion for summary judgment and dismissed the complaint. The employee has appealed. We have determined that the trial court properly granted the summary judgment with regard to the employer but not with regard to the supervisor.

### I.

Allied Plant Maintenance Co. ("Allied") had a contract to maintain the machinery and equipment at the Bridgestone Tire and Rubber plant in LaVerne. In January, 1982, Allied hired Riley C. Blair to work as a maintenance mechanic at the Bridgestone plant. Subsequently, he became a member of Local 912 of the International Union of Operating Engineers ("Local 912"), and his wages, hours, and conditions of employment were governed by the collective bargaining agreement entered into between Allied and Local 912 in September, 1982. The labor contract contained a procedure

enabling an employee to adjust "grievances arising out of his employment."

The incident giving rise to this lawsuit occurred on June 19, 1985. When Mr. Blair reported to work that day, his supervisor, James Oakley, instructed him to repair a chiller in the powerhouse. Mr. Blair inspected the chiller and discovered a broken flow switch. When he returned to the storehouse to obtain a new switch, Mr. Oakley asked him if he had "that goddamned unit running." Mr. Blair told Mr. Oakley that the unit had not been repaired. Hearing this, Mr. Oakley said: "I'm tired of you screwing off on me ... I want it running." Mr. Blair responded "If you know so much then, you go back there and show me."

Mr. Blair claims that at this point Mr. Oakley grabbed him by the arm and neck and shook him, saying: "Goddamn you, you will listen at me." Mr. Blair "snatched away" from Mr. Oakley, and the two men walked back to the broken chiller without further incident.

Mr. Blair and Mr. Oakley had another altercation later in the day just before quitting time. While they were looking for the superintendent of the "tuber department," Mr. Oakley told Mr. Blair to keep his mouth shut about the problems with the chiller unit. Mr. Blair called Mr. Oakley "a piece of shit" and told Mr. Oakley that he had pictures of Mr. Oakley and his girl friend and that he would show them to Mr. Oakley's wife. Mr. Oakley asked Mr. Blair if that was a threat, and Mr. Blair responded: "Hell, no, I'm promising you."

Mr. Blair worked on June 20 and 21 without incident. Even though he was scheduled to work on June 24, Mr. Oakley and his other superiors permitted him to "swap" his days off so he could attend his wife's uncle's funeral.

When Mr. Blair returned to work on June 25, Mr. Oakley instructed him to install a seventy-pound compressor component in an air conditioner located on the roof of the plant. Mr. Blair remembers that Mr. Oakley said: "Get the hell up there and get A/C 4 going." This instruction angered Mr. Blair, but he decided not to ask for help or to say anything because he thought Mr. Oakley was angry too.

Mr. Blair believed he was "being singled out by [Mr.] Oakley in an effort to be 'accidentally' injured". As soon as Mr. Oakley turned his back, Mr. Blair went to the main office of the Bridgestone plant and announced to the Bridgestone officials that he quit. He did not file a grievance with Local 912 or make any complaint to Allied about Mr. Oakley's conduct until he filed this lawsuit against Allied and Mr. Oakley eight months later.

## II.

### Summary Judgment

The defendants' motion for summary judgment was based on several grounds. Unfortunately, the trial court's order granting the summary judgment does not specify the basis for its decision. The better practice is for trial courts to specify the grounds upon which their decisions to grant summary judgments are based. When they fail to do so, this Court must assume that they relied on all the grounds contained in the motion and, therefore, must address the merits of each ground.

Summary judgments provide an efficient means to conclude cases that can be disposed of on legal issues alone. *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 33 (Tenn.1988); *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547, 550 (Tenn.1981). However, they are not substitutes for a trial of disputed factual issues. *Jones v. Home Indem. Ins. Co.*, 651 S.W.2d 213, 214 (Tenn.1983). Nor should they be used to resolve disputes concerning inferences to be drawn from the facts or to weigh the evidence. *Hamrick v. Spring City Motor Co.*, 708 S.W.2d 383, 389 (Tenn.1986); *Executone of Memphis, Inc. v. Garner*, 650 S.W.2d 734, 736 (Tenn.1983).

■ A motion for summary judgment goes to the merits of a complaint and should not be ignored or taken lightly. *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn.1978). Tenn.R.Civ. P. 56.05 warns that a litigant should not "rest upon the mere allegations or denials

in his pleadings." Thus, when a motion for summary judgment is used defensively, the plaintiff's case may be dismissed if, after being given a reasonable opportunity to substantiate its claims, the plaintiff has failed to establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Moman v. Walden,* 719 S.W.2d 531, 533 (Tenn.Ct.App. 1986).

This Court reviews a trial court's decision to grant a summary judgment by considering the pleadings and evidentiary materials in the appellate record in a light most favorable to the opponent of the motion and by drawing all reasonable inferences in the opponent's favor. *Blocker v. Regional Medical Center,* 722 S.W.2d 660, 660 (Tenn.1987); *Poore v. Magnavox Co.,* 666 S.W.2d 48, 49 (Tenn.1984).

We have determined that neither the Workers' Compensation Law, nor the federal labor laws, nor Mr. Blair's failure to make use of the grievance procedure bar Mr. Blair's tort actions against Mr. Oakley. However, we have also determined that Mr. Blair failed to establish the essential elements of his outrageous conduct claim and of his derivative claim against Allied based on Mr. Oakley's assault.

### III.

### Effect of the Workers' Compensation Law

Both Allied and Mr. Oakley argue that Mr. Blair's action should be barred by Tennessee's Workers' Compensation Law.

---

While this may be true insofar as Allied is concerned, it is not the case with regard to Mr. Oakley.

In accordance with Tenn.Code Ann. § 50–6–108 (Supp.1987)[1], the Workers' Compensation Law provides employees with their exclusive remedy against employers for work-related injuries. Employers cannot be sued at common law for an employee's injuries unless the employee shows that the employer actually intended to injure the employee. *Mize v. Conagra, Inc.,* 734 S.W.2d 334, 336 (Tenn.Ct.App. 1987); *King v. Ross Coal Co.,* 684 S.W.2d 617, 619–20 (Tenn.Ct.App.1984); *Cooper v. Queen,* 586 S.W.2d 830, 833 (Tenn.Ct.App. 1979). A coemployee's intentional tort will not give rise to a cause of action against the employer. *Williams v. Smith,* 222 Tenn. 284, 290–91, 435 S.W.2d 808, 811 (1968).

Even though the Workers' Compensation Law limits an injured employee's claims against the employer, it does not place the same limitations on claims against a fellow employee. The Tennessee Supreme Court, relying on Tenn.Code Ann. 50–6–112(a) (Supp.1987)[2], has held that an employee may maintain a common law or statutory tort action against a coemployee who intentionally injures that employee. *Taylor v. Linville,* 656 S.W.2d 368, 370 (Tenn.1983); *Williams v. Smith,* 222 Tenn. 284, 292, 435 S.W.2d 808, 811 (1968).

Mr. Blair alleges that Mr. Oakley committed the torts of assault and outrageous conduct. These actions, if proven, are intentional torts. See *Kite v. Hamblen,* 192 Tenn. 643, 646, 241 S.W.2d 601, 603 (1951).

---

**1.** This statute provides:

**Right to compensation exclusive.—**The rights and remedies herein granted to an employee subject to the Workers' Compensation Law on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of such employee, his personal representative, dependents, or next of kin, at common law or otherwise, on account of such injury or death; provided, however, this section shall not be construed to preclude third party indemnity actions against an employer who has expressly contracted to indemnify such third party.

**2.** This section provides:

When the injury or death for which compensation is payable under the Workers' Compensation Law was caused under circumstances creating a legal liability against some person other than the employer to pay damages, the injured worker, or his dependents, shall have the right to take compensation under such law, and such injured worker, or those to whom his right of action survives at law, may pursue his or their remedy by proper action in a court of competent jurisdiction against such other person.

There are no allegations or proof that Allied intended to injure Mr. Blair, and thus, Mr. Blair's action against Allied must fail.

While the proof offered by Mr. Blair with regard to his claims against Mr. Oakley is of the weakest sort, it is not our role at this stage of the proceeding to weigh the evidence or to decide whether Mr. Blair has made out a prima facie case. After reviewing the record in the light most favorable to Mr. Blair, we have determined that he has alleged two common law causes of action against Mr. Oakley that are not barred by the Workers' Compensation Law.

## IV.

### Preemption by the Federal Labor Laws

Both Allied and Mr. Oakley claim that Mr. Blair's suit is preempted by the federal labor laws because his "claims implicate rights established by and arise under the collective bargaining agreement." While this is true with regard to Mr. Blair's breach of implied contract claim, it is not the case with his tort claims.

The states' authority over various aspects of the relationship between private employers and their employees has been largely displaced by Congress' enactment of the federal labor laws. *Wisconsin Dep't of Indus. v. Gould, Inc.,* 475 U.S. 282, 286, 106 S.Ct. 1057, 1061, 89 L.Ed.2d 223 (1986); *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 244–45, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959). However, Congress has never "exercised authority to occupy the entire field in the area of labor legislation," *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985), and has left much to the states. *Amalgamated Ass'n of Street Employees v. Lockridge,* 403 U.S. 274, 289, 91 S.Ct. 1909, 1919, 29 L.Ed.2d 473, *reh'g denied,* 404 U.S. 874, 92 S.Ct. 24, 30 L.Ed.2d 120 (1971); *Garner v. Teamsters Local Union No. 776,* 346 U.S. 485, 488, 74 S.Ct. 161, 164, 98 L.Ed. 228 (1953).

Congress has not defined with precision the extent to which federal labor laws preempt the states from asserting authority over acts arising out of the employer-employee relationship. *See, e.g., Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 747–48, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985). Thus, the courts have been left with the task of determining the boundaries of the permissible area of state activity. The United States Supreme Court has held that state activity will be permitted "unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978).

State courts have concurrent jurisdiction with federal courts over claims based on the breach of a collective bargaining agreement. *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 507–08, 82 S.Ct. 519, 522–23, 7 L.Ed.2d 483 (1962). However, to insure uniformity, federal labor law preempts state law with regard to actions based on the breach of collective bargaining agreement or to a tort action deriving from such a breach. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209–10, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1985); *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962).

Not every dispute concerning employment or tangentially relating to a collective bargaining agreement is preempted by federal labor law. State law claims whose resolution is not "substantially dependent" upon an analysis of the collective bargaining agreement are not preempted. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. at 220, 105 S.Ct. at 1916. Likewise, and in the absence of compelling Congressional directions, state courts will not be deprived of jurisdiction over claims involving activity which is merely peripheral to the federal labor laws or touches matters deeply rooted in local feeling and responsibility. *Farmer v. United Bhd. of Carpenters, Local 25,* 430 U.S. 290, 296–97, 97 S.Ct. 1056, 1061, 51 L.Ed.2d 338 (1977).

Accordingly, the United States Supreme Court held that an employee's state law action based on the bad faith handling of an insurance claim was preempted. The Court found that the duty to pay the insurance benefit "derived" from the collective bargaining agreement and that any attempt to assess liability "inevitably will involve contract interpretation." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. at 218, 105 S.Ct. at 1914–15. On the other hand, the Court found that an employee's action based upon a state pension statute was not preempted because it was independent from the collective bargaining agreement. *Malone v. White Motor Corp.,* 435 U.S. 497, 504–05, 98 S.Ct. 1185, 1189–90, 55 L.Ed.2d 443 (1978).

Other courts have declined to preempt actions for retaliatory discharge and for the intentional infliction of emotional distress. *Baldracchi v. Pratt & Whitney Aircraft Div., United Technologies Corp.,* 814 F.2d 102, 104–06 (2d Cir.), *app. pending,* —— U.S. ——, 108 S.Ct. 224, 98 L.Ed.2d 183 (1987) (retaliatory discharge); *Collins v. General Time Corp.,* 549 F.Supp. 770, 772 (N.D.Ala.1982) (intentional infliction of emotional distress); *Southwest Gulfcoast, Inc. v. Allan,* 513 So.2d 219, 228 (Fla.Dist.Ct.App.1987) (retaliatory discharge); *Gonzalez v. Prestress Eng'g Corp.,* 115 Ill.2d 1, 104 Ill.Dec. 751, 756, 503 N.E.2d 308, 313 (1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3248, 97 L.Ed.2d 779 (1987) (retaliatory discharge); *Midgett v. Sackett–Chicago, Inc.,* 105 Ill.2d 143, 85 Ill.Dec. 475, 479, 473 N.E.2d 1280, 1284 (1984), *cert. denied,* 474 U.S. 909, 106 S.Ct. 278, 88 L.Ed.2d 243 (1985) (retaliatory discharge).

 The question for this Court is whether the evaluation of any of Mr. Blair's causes of action is inextricably intertwined with a consideration of the terms of the collective bargaining agreement between Allied and Local 912. While the consideration of Mr. Blair's breach of implied contract claim is dependent on a consideration of the collective bargaining agreement, Mr. Blair's tort claims against Mr. Oakley are not. Tennessee has a strong and traditional interest in preventing assaults by one citizen against another. Mr. Blair can pursue his actions against Mr. Oakley without reference to the collective bargaining agreement, and the state court's assumption of jurisdiction over these claims will not interfere with the uniform application or operation of the federal labor laws.

## V.

### Use of the Grievance Procedure

· Allied and Mr. Oakley also insist that Mr. Blair's action should be dismissed because he failed to avail himself of the grievance process contained in the collective bargaining agreement between Allied and Local 912. Mr. Blair concedes that he did not file a grievance but insists that doing so would have been futile. Notwithstanding Mr. Blair's assertions concerning the efficacy of the grievance procedure, we have determined that his tort claims against Mr. Oakley were not barred.

Employees must follow the grievance procedures contained in a collective bargaining agreement when their claim is based upon the collective bargaining agreement itself. *Brewer v. Argo–Collier Truck Lines Corp.,* 592 S.W.2d 322, 326 (Tenn.1979). However, this rule does not apply to causes of action that exist independent of the labor contract. *Gonzalez v. Prestress Eng'g Corp.,* 115 Ill.2d 1, 104 Ill.Dec. 751, 503 N.E.2d 308, 313 (1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3248, 97 L.Ed.2d 779 (1987); *Midgett v. Sackett–Chicago, Inc.,* 105 Ill.2d 143, 85 Ill.Dec. 475, 479, 473 N.E.2d 1280, 1284 (1984), *cert. denied,* 474 U.S. 909, 106 S.Ct. 278, 88 L.Ed.2d 243 (1985).

 Mr. Blair's tort actions against Mr. Oakley for assault and outrageous conduct are actions against Mr. Oakley personally; they are not labor disputes with his employer. They can be considered without reference to the collective bargaining agreement, and there is nothing in the collective bargaining agreement to indicate that employees have agreed to substitute the grievance process for their private tort

actions against fellow employees. This being the case, it is not appropriate to require Mr. Blair to exhaust his contractual remedies before permitting him to pursue his independent tort claims against Mr. Oakley. The same cannot be said for Mr. Blair's implied breach of contract claim against Allied. That claim arises out of the collective bargaining agreement, and, therefore, Mr. Blair should have used the grievance procedure to resolve it.

## VI.

### The Outrageous Conduct Claim

When the Tennessee Supreme Court first recognized the tort of outrageous conduct in 1966, it held that there were two essential elements to the cause of action: (1) the conduct must be so outrageous that it is not tolerated by civilized society and (2) the conduct complained of must result in serious mental injury. *Medlin v. Allied Inv. Co.*, 217 Tenn. 469, 479, 398 S.W.2d 270, 274 (1966). *See also Swallows v. Western Elec. Co.*, 543 S.W.2d 581, 582 (Tenn.1976); *Bringle v. Methodist Hosp.*, 701 S.W.2d 622, 625 (Tenn.Ct.App.1985).

Later, the Court described the tort as a "cause of action for intentional or reckless infliction of serious emotional distress by means of extreme and outrageous conduct." *Moorhead v. J.C. Penney Co.*, 555 S.W.2d 713, 717 (Tenn.1977). Today, the courts most commonly use the Restatement (Second) of Torts' description which states:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 comment d (1965). *See Goldfarb v. Baker*, 547 S.W.2d 567, 568–69 (Tenn.1977); *Holt v. American Progressive Life Ins. Co.*, 731 S.W.2d 923, 926–27 (Tenn.Ct.App.1987); *Bryan v. Campbell*, 720 S.W.2d 62, 64–65 (Tenn.Ct.App.1986).

■ Mr. Blair has not substantiated his outrageous conduct claims. His affidavit and deposition failed to establish both essential elements of the tort. First, while Mr. Oakley's conduct, if in fact it occurred, was certainly not a textbook example of commendable management style, occasional pushing, shoving and swearing among workers in a factory is not the type of conduct that an average member of the community would consider outrageous. Second, Mr. Blair concedes that he suffered no physical or emotional effects from his altercations with Mr. Oakley.

■ With regard to Allied's condonation of Mr. Oakley's conduct, Mr. Blair also conceded that Mr. Oakley never hit him before and that he had never observed Mr. Oakley striking another employee. While he claims that he had seen Mr. Oakley "verbally abuse" other employees, Mr. Blair, when pressed, was unable to remember the substance of this abuse or to give any other details concerning Mr. Oakley's conduct. He produced no corroboration and, most significantly, was unable to prove that Allied condoned Mr. Oakley's conduct or even that it had been brought to Allied's attention.

## VII.

The portion of the summary judgment dismissing Mr. Blair's action against Mr. Oakley for assault is vacated. All other portions of the summary judgment are affirmed. The case is remanded to the trial court for further proceedings. Costs of the appeal are taxed to Riley C. Blair and his surety for which execution, if necessary, may issue.

TODD, P.J., concurs.

FRANKS, J., files dissenting opinion.

FRANKS, Judge, dissenting.

I concur with the result reached by the majority insofar as the majority opinion affirms the summary judgment. The majority mentions *Brewer v. Argo–Collier Truck Lines Corp.*, 592 S.W.2d 322 (Tenn. 1979), which states the general rule that "[a] suit will not lie in either state or federal court" where the collective bargaining contract provides for grievance procedures. [At 326.] The majority concludes, however, that "... [Mr. Blair's tort action] can be considered without reference to the collective bargaining agreement, and there is nothing in the collective bargaining agreement to indicate that employees have agreed to substitute the grievance process for their private tort actions against fellow employees." This approach is contrary to the prevailing view interpreting agreements to arbitrate disputes.

Federal courts have uniformly held arbitration is a favorite means of resolving labor disputes and, while obligations to arbitrate are a matter of contract, if any uncertainty exists as to whether the grievance falls within the agreement to arbitrate, arbitration is appropriate. *Salary Policy Employee Panel v. Tenn. Valley Auth.*, 731 F.2d 325 (6th Cir.1984). The Third Circuit, as restated in *Local U. No. 336 v. Detroit Gasket & Mfg. Co.*, 521 F.Supp. 39 at 40 (E.D.Tenn., N.E.Div., 1981), has held:

> Consequently, although the parties are bound to arbitrate only those disputes they have agreed to arbitrate, all doubts or ambiguities must be resolved in favor of arbitration. *Controlled Sanitation Corp. v. Dist. 128, Etc.*, C.A.3d (1975), 524 F.2d 1324, 1328[2], certiorari denied (1976), 424 U.S. 915, 96 S.Ct. 1114, 47 L.Ed.2d 319. "... In effect, there is a presumption in favor of arbitrability which should be dispelled only when the agreement explicitly exempts certain conduct from arbitration *or* when the terms of the agreement, read as a whole, clearly envision non-arbitrability."

The nature of this dispute is such that "non-arbitrability" is clearly not envisioned. The dispute between plaintiff and his supervisor is nothing more, in the words of Professor Larson, than "a work connected quarrel". If courts countenance every bumping, pushing, laying on of hands or exchanging of harsh words occurring in the work place which result in no adverse *"physical or emotional effects"*, [emphasis supplied] collective bargaining agreements will be trivialized and harmonious labor relations impaired.

Disputes of this nature are highly appropriate for arbitration and I would hold plaintiff is contractually bound to arbitrate this dispute under the terms of the collective bargaining agreement and affirm the trial court's summary judgment on this issue. Moreover, under the majority's theory, plaintiff would only be entitled to nominal damages and affirmance of the trial court's judgment is appropriate under the standard stated in *Brewer:*

> We, therefore, believe that lawyer, litigant and judicial economy dictate an affirmation of the Trial Judge in this respect, as opposed to reversing on a naked legal proposition when the results are foreordained.