# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

| | | |
|---|---|---|
| **PRISM PARTNERS, L.P.,** | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | **Davidson Circuit No. 95C-4342** |
| | ) | |
| **VS.** | ) | **Appeal No. 01A01-9703-CV-00103** |
| | ) | |
| **MICHAEL D. FIGLIO,** | ) | |
| | ) | |
| Defendant/Appellant, | ) | |
| | ) | |
| **VS.** | ) | |
| | ) | |
| **PRISM PARTNERS, L.P.** | ) | |
| **LARRY CHERRY,** | ) | |
| | ) | |
| Counter-Defendant/ | ) | |
| Appellee, | ) | |
| Third Party Defendant/ | ) | |
| Appellee. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
### AT NASHVILLE, TENNESSEE
### THE HONORABLE BARBARA N. HAYNES, JUDGE

**STEVE NORTH**
**MARK NORTH**
Madison, Tennessee
Attorneys for Appellant

**EDMUND W. TURNLEY, III**
Nashville, Tennessee
Attorney for Appellant

**RICHARD M. SMITH**
**MANIER, HEROD, HOLLABAUGH & SMITH**
Nashville, Tennessee
Attorney for Plaintiff/Appellee, Prism Partners, L.P.

**W. LEE CORBETT**
**DAVID F. LEWIS**
**CORBETT, CROCKETT & LECKRONE**
Nashville, Tennessee
Attorneys for Third-Party Defendant/Appellee, Larry Cherry

**AFFIRMED IN PART, REVERSED IN PART**
**& REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

In this unlawful detainer action, Defendant Michael D. Figlio appeals the trial court's

final judgment which held that Plaintiff/Appellee Prism Partners, L.P., had free and clear

title to the subject property, ordered Figlio to vacate the subject property, and dismissed Figlio's counterclaim for conspiracy. The trial court's judgment also dismissed Figlio's third-party complaint for fraud and conspiracy against Third-Party Defendant/Appellee Larry Cherry. For the reasons hereinafter stated, we affirm in part and reverse in part the trial court's judgment, and we remand for further proceedings.

## I. Procedural History

This lawsuit began as an unlawful detainer action filed in the Metropolitan General Sessions Court of Davidson County by Prism Partners against Figlio. In its complaint, Prism Partners alleged that Figlio was unlawfully detaining certain real property located at 115 Brookhollow Road in Nashville, Tennessee. The complaint sought possession of the property and past-due rent in the amount of $63,000.

After the case was transferred to the Circuit Court for Davidson County, Figlio filed an answer in which he asserted several affirmative defenses, including, but not limited to, the statute of limitations, unclean hands, and conspiracy. Figlio also asserted a counterclaim against Prism Partners for conspiracy. In support of this counterclaim, Figlio alleged that Prism Partners received title to the subject property by quitclaim deed executed by Third-Party Defendant Larry Cherry on October 31, 1995; that Prism Partners paid no consideration for the property; and that Prism Partners and Cherry had conspired to deprive Figlio of his ownership of the property.

In addition to asserting a counterclaim against Prism Partners, Figlio filed a third-party complaint against Larry Cherry for fraud and conspiracy. The conspiracy count was based on the same factual assertions as the conspiracy claim against Prism Partners. The fraud claim, however, dated back to a series of events beginning in 1986. In support of the fraud claim, Figlio made the following allegations:

> 5.      That in 1986, Cherry owned and operated a financial consultant business under the style of Money Management Services.
>
> 6.      That in or about February, 1986, Figlio and his wife, were experiencing financial difficulties and consulted with Cherry regarding the establishment of a plan to enable them to retain their financial stability.

2

7.     That Cherry established a financial plan wherein Figlio and his wife would pay all of their income to Cherry and he would negotiate with their creditors, pay their bills, and conserve their income until such time as they had reached financial stability.

8.     That Cherry further devised a plan wherein Figlio and his wife would sell their home at 115 Brookhollow Road, Nashville, Davidson County, Tennessee, to certain of Cherry's investors for the sum of $150,000, which would give the investors a tax advantage and at the same time, provide monies needed by Figlio and his wife to bring current their obligations and have additional capital upon which to live. Said sale was described as being in actuality a loan with the right in Figlio to repurchase the property when they were financially able to either sell or refinance the property.

9.     That Figlio and his wife paid all of their income to Cherry for approximately one year.

10.     That Cherry failed and/or refused to properly account for monies received and many obligations of Figlio and his wife were either not paid or paid in an untimely manner, causing additional problems for Figlio and his wife, including claims filed against them by the Internal Revenue Service.

11.     That Cherry fraudulently induced Figlio and his wife to execute a deed to their property to Cherry's investors, full well knowing that the financial plan structured by him for Figlio and his wife, would never result in their ability to repurchase the property.

12.     That Cherry and Figlio terminated their arrangement in or about February, 1987.

13.     That Figlio paid rent on the property at the rate of $900 per month until June, 1989, when he was unable to obtain a true and accurate accounting from Cherry.

14.     That from and after June, 1989, Cherry continually threatened Figlio with eviction, but full well knowing of his fraudulent acts and misrepresentations, did not bring an eviction action until June, 1994, when he filed a Detainer Warrant in the Metropolitan General Sessions Court, Docket Number 94GT4843, alleging that Figlio was in arrears in the sum of $48,600, . . . .

15.     That Cherry failed to prosecute said Detainer Warrant and in December, 1995, entered a voluntary non-suit. . . .

Figlio's third-party complaint further alleged that, having dismissed the initial detainer warrant, Cherry conspired with Prism Partners to deprive Figlio of his property. In furtherance of this conspiracy, Cherry allegedly executed the quitclaim deed and transferred the property to Prism Partners for no consideration.

In response to the third-party complaint, Cherry filed a motion to dismiss, contending that the complaint failed to state a claim upon which relief could be granted and that the

3

complaint was barred by the three-year statute of limitations for fraud actions. Prism Partners filed a "Response to Motion to Dismiss" in which it adopted the legal arguments set forth in Cherry's motion to dismiss.

In March 1996, the trial court entered an order dismissing Figlio's third-party claims against Cherry for fraud and conspiracy based on the court's ruling that Figlio had not pled these claims with sufficient particularity. See T.R.C.P. 9.02.

Figlio filed a motion to vacate the trial court's March 1996 order, supported by a memorandum and affidavit. In his affidavit, Figlio admitted that Cherry's fraudulent scheme initially was exposed in 1989. Figlio asserted, however, that Cherry had engaged in an intentional, ongoing conspiracy to deprive Figlio of funds and property which culminated in October 1995, when Cherry quitclaimed the property to Prism Partners for no consideration.

In April 1996, the trial court entered an order which ruled that, inasmuch as Figlio's third-party claim for conspiracy against Cherry had been dismissed, "the subject matter of the Motion For Summary Judgment set for hearing April 19, 1996 [was] moot." Because no motion for summary judgment appears in the record, we can only surmise that the trial court's order referred to Prism Partners' "Response to Motion to Dismiss" in which Prism Partners adopted the legal grounds for dismissal set forth in Cherry's motion to dismiss.

On June 17, 1996, the trial court entered an order which made the following rulings:

> 1. That any fraud, misrepresentation and/or conspiracy claim as to Prism Partners, L.P. is dismissed, with prejudice;
>
> 2. That the Defendant, Michael Figlio, vacate the premises as he has unlawfully detained the premises;
>
> 3. That the Warranty Deed executed by Figlio and his wife in 1986, be given full force and effect according to its specific terms;
>
> 4. That Prism, L.P. has free and clear title to the property as to Defendant Figlio; and
>
> 5. That a date be set for a determination as to issues concerning damages only.

4

The trial court also entered an order on June 17, 1996, which denied Figlio's motion to vacate the court's previous judgment dismissing Third-Party Defendant Cherry from this lawsuit. This time, in reaffirming its dismissal of the third-party complaint against Cherry, the trial court ruled that Figlio's cause of action against Cherry was barred by the statute of limitations. The trial court's order indicated that, in making its ruling, the court considered the entire record, including affidavits and depositions filed in the case.

On August 8, 1996, Prism Partners filed a motion asking the trial court to enter a final judgment in this case as to all issues but damages. The trial court granted the motion and, on September 11, 1996, entered a final judgment pursuant to rule 54.02 of the Tennessee Rules of Civil Procedure. The trial court entered an amended final judgment on September 30, 1996, which additionally assessed costs against Figlio. Figlio timely filed a motion for new trial, which was denied on December 9, 1996.

On appeal, Figlio contends that the trial court erred in dismissing his third-party complaint for fraud and conspiracy against Cherry on statute of limitations grounds; in dismissing Figlio's counterclaim for conspiracy against Prism Partners; and, finally, in entering judgment in favor of Prism Partners on the detainer warrant without ruling on the defenses asserted in Figlio's answer, such as the statute of limitations, unclean hands, and conspiracy.

## II. Standard of Review

As an initial matter, we find it necessary to determine the appropriate standard governing this court's review of the trial court's rulings in this case. Although Prism Partners' and Cherry's motions to dismiss originally were filed pursuant to rule 12.02(6) of the Tennessee Rules of Civil Procedure, the orders under review reveal that the trial court considered the entire record in issuing its rulings, including affidavits and depositions filed by the parties. By considering matters outside the pleadings, the trial court converted the motions to dismiss into motions for summary judgment. Pacific E. Corp. v. Gulf Life Holding Co., 902 S.W.2d 946, 952 (Tenn. App. 1995); T.R.C.P. 56.03.

5

Summary judgment is to be rendered by a trial court only when it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. T.R.C.P. 56.03. When a motion for summary judgment is used defensively, the plaintiff must present evidence sufficient to establish the essential elements of the claim on which he will bear the burden of proof at trial. Blair v. Allied Maintenance Corp., 756 S.W.2d 267, 269-70 (Tenn. App. 1988). In ruling on a motion for summary judgment, the trial court and the Court of Appeals must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof. All of the evidence must be viewed in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. It is only when there is no disputed issue of material fact that a summary judgment should be granted by the trial court and sustained by the Court of Appeals. Byrd v. Hall, 847 S.W.2d 208, 211 (Tenn. 1993).

### III. Figlio's Fraud Claim Against Cherry

Applying the foregoing standard, we affirm the trial court's dismissal of Figlio's fraud claim against Cherry based on the statute of limitations. In Tennessee, the statute of limitations for fraud is three years. Vance v. Schulder, 547 S.W.2d 927, 933 (Tenn. 1977); American Fidelity Fire Ins. Co. v. Tucker, 671 S.W.2d 837, 841 (Tenn. App. 1983); T.C.A. § 28-3-105 (1980). As previously indicated, Figlio admitted in his affidavit that Cherry's fraudulent scheme initially was exposed in 1989; however, Figlio did not file his third-party claim for fraud against Cherry until January 1996. Accordingly, based on the undisputed evidence, we hold that Figlio's fraud claim was barred by the three-year statute of limitations.

### IV. Figlio's Conspiracy Claims Against Prism Partners and Cherry

Contrary to the trial court's determination, however, the court's dismissal of the fraud claim against Cherry did not automatically dispose of the conspiracy claims against Cherry and Prism Partners. Figlio's third-party complaint against Cherry alleged, not one, but two separate torts: fraud and conspiracy. The first tort occurred in 1986, when Cherry allegedly fraudulently induced Figlio to execute a quitclaim deed to the subject property by falsely representing, among other things, that the transaction was in actuality a loan and

6

that the transaction was in Figlio's financial best interests.[1]  The second tort occurred in 1995, when Cherry and Prism Partners allegedly conspired to deprive Figlio of the subject property.  Figlio alleged that, to this end, Cherry executed a quitclaim deed to the property to Prism Partners for zero consideration.

The statute of limitations for conspiracy is only one year.  Braswell v. Carothers, 863 S.W.2d 722, 725 (Tenn. App. 1993); Harvest Corp. v. Ernst & Whinney, 610 S.W.2d 727, 729-30 (Tenn. App. 1980); T.C.A. § 28-3-104 (Supp. 1990).  This one-year period of limitation, however, does not begin to run until the time that an overt act of the conspiracy occurs which causes damage to the complainant.  Budget Rent-A-Car v. Car Services, 469 S.W.2d 360, 362 (Tenn. 1971); Emerson v. Machamer, 431 S.W.2d 283, 286 (Tenn. 1968).  In this case, an overt act of the alleged conspiracy occurred in October 1995, when Cherry transferred the property to Prism Partners for no consideration.  If, as alleged, Cherry and Prism Partners were acting in concert to deprive Figlio of the subject property, the argument also could be made that Prism Partners acted in furtherance of the conspiracy by filing this unlawful detainer action in November 1995.  In any event, Figlio's counterclaim and third-party claim for conspiracy, filed in January 1996, were timely filed within the one-year statute of limitations.[2]

The foregoing discussion, of course, assumes that Figlio has presented evidence sufficient to establish the essential elements of a claim for civil conspiracy against Prism Partners and Cherry.  See Blair v. Allied Maintenance Corp., 756 S.W.2d 267, 269-70 (Tenn. App. 1988).  A civil conspiracy is

> A "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means."  Dale v. Thomas H. Temple Co., [208 S.W.2d 344, 353 (Tenn. 1948)].  The

---

[1]Contrary to the trial court's ruling, we conclude that Figlio's complaint contained sufficiently specific allegations to state a cause of action for fraud.  See, e.g., Vance v. Schulder, 547 S.W.2d 927, 931-32 (Tenn. App. 1977); Pridemore v. Cherry, 903 S.W.2d 705, 707-08 (Tenn. App. 1995).

[2]Because the causes of action alleged by Figlio involved two discrete acts, rather than a continuous act, we conclude that this court's recent holding in Wansley v. Refined Metals Corp., No. 02A01-9503-CV-00065, 1996 WL 502497 (Tenn. App. Sept. 6, 1996), perm. app. denied (Tenn. Jan. 27, 1997), does not bar Figlio's action for conspiracy against Cherry.  In Wansley, we held that, where "a plaintiff learns of his injuries and learns of the causal connection to the defendant's conduct and continues to be subjected to such conduct," the statute of limitations begins to run when the plaintiff discovers his cause of action and not when the plaintiff's exposure to the tortious conduct ceases.  Id., at *6.  Here, the second tort alleged by Figlio, the conspiracy, involved different conduct and a different tortfeasor than the first tort, the fraud.  Accordingly, we do not view the tortious acts alleged in this case to be a "continuing tort."  See generally 54 C.J.S. Limitation of Actions § 177 (1987).

7

> essence of a civil conspiracy is a concert or combination to defraud or cause other injury to person or property, which results in damage to the person or property of the plaintiff. Black's Law Dictionary, 5th Ed. 1979. The requisite elements of the cause of action are common design, concert of action, and an overt act. Koehler v. Cummings, 380 F. Supp. 1294 (M.D. Tenn. 1974).

Kirksey v. Overton Pub, Inc., 739 S.W.2d 230, 236-37 (Tenn. App. 1987); accord Braswell v. Carothers, 863 S.W.2d 722, 727 (Tenn. App. 1993).

We conclude that Figlio has presented sufficient evidence to support his claim that Cherry and Prism Partners acted in concert to wrongfully deprive Figlio of the subject property. Figlio's theory of recovery was that Cherry justifiably feared that his prior fraudulent conduct in procuring title to the subject property would prevent him from successfully pursuing an unlawful detainer action in his own name; that Cherry and Prism Partners, therefore, agreed that Cherry would convey the subject property to Prism Partners, which, in return, would pursue the unlawful detainer action in the partnership's name; and that, to this end, Cherry conveyed the subject property to Prism Partners for no consideration. The affidavits and depositions filed in this case reveal the following evidence to support this theory. In 1986, Cherry induced Figlio to quitclaim the subject property to him by falsely representing that the transaction was actually a loan and that the transaction was in Figlio's best interest financially. In 1994, Cherry filed an unlawful detainer action seeking to oust Figlio from the property, but Cherry later filed a voluntary non-suit dismissing this action. Cherry's only stated reason for dismissing the lawsuit was that he "really [didn't] like lawsuits." Shortly before Cherry's dismissal of the lawsuit, Cherry transferred the subject property to Prism Partners. The deed recited that there was zero consideration for the transfer. Prism Partners was formed on October 30, 1995, only one day before Cherry transferred the subject property to the partnership. The general partner of Prism Partners was Prism Management, Inc., which was solely owned by Richard L. Garrett. Garrett was Cherry's accountant, and their offices were in the same building. The remaining partners of Prism Partners were fourteen investors who formerly belonged to an investment group known as Money Management III, for which Cherry served as trustee prior to formation of the partnership. The investors joined Prism Partners on the advice of Garrett, who discussed the matter with Cherry and an attorney. Approximately one week

8

after receiving title to the subject property, Prism Partners filed this unlawful detainer action against Figlio.

We recognize that much of the above evidence was circumstantial as to whether Cherry and Prism Partners had the requisite agreement to engage in a civil conspiracy. A civil conspiracy, however, may be proven by evidence which is largely circumstantial. See Dale v. Thomas H. Temple Co., 208 S.W.2d 344, 353 (Tenn. 1948). Moreover, we note that, as a general rule, "summary judgments should not be granted in cases where the outcome hinges squarely upon the state of mind, intent, or credibility of the witnesses." Knapp v. Holiday Inns, 682 S.W.2d 936, 941-42 (Tenn. App. 1984). This rule is particularly apt where, as in this case, the critical witnesses are also parties to the action. See McDowell v. Moore, 863 S.W.2d 418, 421 (Tenn. App. 1992). Based on the evidence presented in this case, we conclude that the trial court erred in granting summary judgment to Prism Partners and Cherry on Figlio's claims for conspiracy.

## V. Figlio's Defenses to Prism Partners' Unlawful Detainer Action

We likewise agree with Figlio's contention that the trial court improperly granted relief to Prism Partners on its unlawful detainer warrant without ruling on the defenses asserted in Figlio's answer. Again, we can only surmise that the trial court granted this relief based on the court's determination that the dismissal of Figlio's claims for fraud and conspiracy somehow disposed of Figlio's defenses to the unlawful detainer action, particularly the defenses of unclean hands and conspiracy. The trial court's dismissal of the fraud and conspiracy claims, however, was based on the statute of limitations, not on the court's factual determination that the claims were unfounded. As we previously have held, the trial court's dismissal of the conspiracy claims was in error. Moreover, even if the fraud and conspiracy claims were properly dismissed based upon the applicable statutes of limitations, we can find nothing in the law, and the parties have cited no authority, which would preclude Figlio from asserting the doctrine of unclean hands and conspiracy defensively in this lawsuit. While causes of action have statutes of limitations, defenses do not.

Under the doctrine of unclean hands,

9

> [H]e who comes into a court of equity, asking its interposition in his behalf, must come with clean hands; and if it appears from the case made by him or by his adversary that he has himself been guilty of unconscionable, inequitable, or immoral conduct in and about the same matters whereof he complains of his adversary, or if his claim to relief grows out of or depends upon or is inseparably connected with his own prior fraud, he will be repelled at the threshold of the court.

C.F. Simmons Med. Co. v. Mansfield Drug Co., 23 S.W. 165, 168 (Tenn. 1893). The doctrine of unclean hands

> [E]xpresses the principle that where a party comes into equity for relief he or she must show that his or her conduct has been fair, equitable, and honest as to the particular controversy in issue. A complainant will not be permitted to take advantage of his or her own wrong or claim the benefit of his or her own fraud or that of his or her privies.

27A Am. Jur. 2d Equity § 126 (1996).

This equitable maxim prevents parties from using the courts to enforce agreements "that arise out of unconscionable, immoral or just plain 'crooked' conduct." Farmers & Merchants Bank v. Templeton, 646 S.W.2d 920, 924 (Tenn. App. 1982). The operation of the maxim is confined to misconduct connected with the subject matter of the litigation. Greer v. Shelby Mut. Ins. Co., 659 S.W.2d 627, 630 (Tenn. App. 1983) (citing Henry R. Gibson, Gibson's Suits in Chancery § 18, at 20-21 (William H. Inman ed., 6th ed. 1982)). Subject to the procedures set forth in Continental Bankers Life Insurance Co. v. Simmons, 561 S.W.2d 460, 464 (Tenn. App. 1977), this equitable defense may be raised in circuit court or in chancery court, even if the suit is one at law.

Although a finding of fraud or conspiracy on the part of the plaintiff may support the defense of unclean hands, the success of an unclean hands defense is not contingent upon the defendant's successful pursuit of any actionable claim against the plaintiff:

> [O]ne's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character to [warrant] application of the maxim; any wilful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim. Within the purview of the maxim, the hands of the litigant are rendered unclean by conduct which is "condemned and pronounced wrongful by honest and fair-minded men," inequitable, unfair, dishonest, fraudulent, unconscionable, or in bad faith.

27A Am. Jur. 2d Equity § 129 (1996) (footnotes omitted); accord Southern Coal & Coke Co. v. Beech Grove Mining Co., 381 S.W.2d 299, 303 (Tenn. App. 1963) (indicating that, if plaintiff has committed any willful act in regard to subject matter of litigation "which would be condemned and pronounced wrongful by honest and fairminded men," such act will be sufficient to make plaintiff's hands unclean) (quoting Christians v. Town of East Ridge, 12 Tenn. App. 101, 112 (1928)). In accordance with the foregoing authorities, we conclude that the record contains evidence to support Figlio's defenses of unclean hands and conspiracy and, thus, that summary judgment was improvidently granted in Prism Partners' unlawful detainer action.

## VI. Conclusion

In holding that the trial court erred in granting relief to Prism Partners on its unlawful detainer warrant without ruling on Figlio's defenses, we express no opinion on the merits of the various defenses asserted by Figlio or on the merits of Figlio's conspiracy claims against Prism Partners and Cherry. We merely hold that, at this stage in the proceedings, the pleadings and evidence reveal genuine issues of material fact which precluded the trial court from deciding these issues on summary judgment.

The portion of the trial court's judgment dismissing Figlio's third-party claim for fraud against Cherry is affirmed. In all other respects, the trial court's judgment is hereby reversed. Specifically, the trial court's order awarding Prism Partners affirmative relief on its unlawful detainer warrant, as well as the trial court's orders dismissing Figlio's claims for conspiracy against Prism Partners and Cherry, are reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs on appeal are taxed to Appellees, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
FARMER, J.

11

LILLARD, J.